*NIQA*

*19-2642*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA DEARDORFF and DAVID CHAPMAN, on behalf of themselves and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CELLULAR SALES OF KNOXVILLE, INC., CELLULAR SALES OF PENNSYLVANIA, LLC, and CELLULAR SALES OF NORTH CAROLINA, LLC.<br><br><br><br><br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT – CLASS ACTION

Civil Action No.:

Jury trial demanded

Plaintiffs Deardorff and Chapman ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Getman, Sweeney & Dunn, PLLC, and Outten & Golden LLP, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs are individuals who have worked for Defendants in their Verizon-authorized retail locations nationwide as Sales Representatives selling cellular service and related equipment.

*JUN 18 2019*

2.      This case arises out of Defendants' failure to pay overtime wages to Plaintiffs and other similarly situated employees for hours worked over 40 in a work week.

3.      Sales Representatives work more than 40 hours in a week and Defendants have company-wide pay policies and practices and a time recording system that encourages Sales Representatives to work unscheduled hours that go unrecorded.  Despite Sale Representatives' performance of work during overtime hours, Defendants do not pay Sales Representatives overtime wages.

4.      Plaintiffs bring collective action claims under the FLSA for overtime wages required under 29 U.S.C. § 207 but not paid.  Plaintiffs bring these claims on behalf of themselves and other similarly situated employees under 29 U.S.C. § 216(b) for payment of back wages and an equal amount of liquidated damages, attorneys' fees, interest, and costs under 29 U.S.C. § 216(b).

5.      Plaintiff Chapman also brings class action claims under North Carolina Wage and Hour Act,  N.C. Gen. Stat. § 95-25.1, *et seq.* ("NCWHA") for failure to pay wages when due.  He brings these claims on behalf of himself and other similarly situated employees who Defendants employed in North Carolina pursuant to Fed. R. Civ. P. 23(b)(3) for payment of unpaid wages, liquidated damages, attorneys' fees, interest, and costs.

6.      Plaintiff Deardorff also brings class action claims under the Pennsylvania Minimum Wage Act, 34 Pa. Code § 231.1 *et seq*. for failure to pay all wages when due.  Deardorff brings these claims on behalf of herself and other

2

similarly situated employees who Defendants employed in Pennsylvania pursuant to Fed. R. Civ. P. 23(b)(3) for payment of unpaid wages, liquidated damages, attorneys' fees, interest, and costs.

## JURISDICTION AND VENUE

7.      The Court has federal question jurisdiction in this action pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

8.      The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

9.      This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

11.     Plaintiff Jessica Deardorff is a natural person who currently resides in York County, Pennsylvania.  From approximately May 2017 to December 2017, Deardorff worked as a Sales Representative in Defendants' stores in Hanover, PA, Hummelstown, PA, and Waynesboro, PA.  Deardorff also attended trainings in Philadelphia, PA and occasional meetings in York, PA.

12.     During the period that Deardorff worked for Defendants, Defendants employed her and other Sales Representatives within the meaning 29 U.S.C. §§ 203(d) and 203(g) to sell Verizon cellular service and equipment in their Verizon authorized retail stores. Defendants employed Deardorff and other Sales Representatives in

3

interstate commerce and in an enterprise engaged in the production of goods for interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

13.     During her employment, Deardorff regularly worked more than 40 hours in a workweek. Despite her overtime work, Defendants did not pay Deardorff overtime wages for the overtime hours.

14.     Deardorff's consent to sue form is attached as Exhibit A.

15.     Plaintiff David Chapman is a natural person who currently resides in Edgecombe County, North Carolina.  From approximately January 2017 to July 2018, Chapman worked for Defendants as a Sales Representative in Defendants' store at 102 River Oaks Dr., Tarboro, NC 27886.

16.     During the period that Chapman worked for Defendants, Defendants employed him and other Sales Representatives within the meaning 29 U.S.C. §§ 203(d) and 203(g) to sell Verizon cellular service and equipment in their Verizon authorized retail stores. Defendants employed Chapman and other Sales Representatives in interstate commerce and in an enterprise engaged in the production of goods for interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

17.     During his employment, Chapman regularly worked more than 40 hours in a workweek.  Despite his overtime work, Defendants did not pay Chapman overtime wages for the overtime hours.

18.     Chapman's consent to sue is attached as Exhibit B.

19.     Defendant Cellular Sales of Knoxville, Inc. is a privately held, for-profit corporation organized under the laws of the State of Tennessee for the purpose, among

4

others, of selling cellular phone service and related equipment across the country. Its principle place of business is located at 9040 Executive Park Drive, Knoxville, TN 37923-4607 and it may be served through its registered agent Pamela Kimball in room 329 on floor 3 at that same address.

20.    Defendant Cellular Sales of Pennsylvania, LLC is a privately held, for-profit corporation organized under the laws of the Pennsylvania for the purpose, among others, of selling cellular phone service and related equipment in Pennsylvania. Its principle place of business is 309 Lancaster Ave., Malvern, PA 19355-1889, and it may be served through its registered agent CT Corporation System at 116 Pine Street, Suite 320, Harrisburg, PA 17101.

21.    Defendant Cellular Sales of North Carolina LLC is a privately held, for-profit corporation organized under the laws of the State of North Carolina for the purpose, among others, of selling cellular phone service and related equipment in North Carolina. Its principle place of business is located at 160 Mine Lake Court, Suite 200, Raleigh, NC 27615-6417 and it may be served through its registered agent CT Corporation System.

22.    Upon information and belief, Defendant Cellular Sales of Pennsylvania is a wholly owned subsidiary of Defendant Cellular Sales of Knoxville, Inc.

23.    Upon information and belief, Defendant Cellular Sales of North Carolina LLC is a wholly owned subsidiary of Defendant Cellular Sales of Knoxville, Inc.

5

24.    A substantial amount of both Defendants' Cellular Sales of

Pennsylvania and Defendant Cellular Sales of Knoxville, Inc. business was conducted

in this District.

25.    The precise size and the identity of the Pennsylvania and North Carolina

Putative Class Members should be ascertainable from the business records, tax records

and/or employee or personnel records of Defendants and their related and affiliated

entities.

## FLSA COLLECTIVE ACTION DEFINITION

26.    The class of similarly situated employees sought to be certified under

29 U.S.C. § 216(b) as a collective action is defined as:

> all current and/or former employees of Defendants who were or are
> employed to sell cellular service and related equipment in Defendants'
> retail stores and were not paid overtime wages for all hours worked
> more than 40 in a workweek since the date which falls within the three
> chronological years immediately preceding the date on which this action
> was filed to the date final judgment in this action is entered.

("FLSA Collective Members")

## RULE 23 NORTH CAROLINA CLASS DEFINITION

27.    The class of similarly situated employees sought to be certified as a class

under Fed. R. Civ. P. 23 is defined as:

> all current and/or former persons employed by one or more of
> Defendants in North Carolina to sell cellular service and related
> equipment in Defendants' Verizon authorized retail stores and were not
> paid overtime wages for hours worked more than 40 in a workweek.
> The Class Action Period is the period ending at any time in the two-year
> time period immediately preceding the date on which this action is filed
> to the date final judgment in this action is entered.

("NC Class Members")

## RULE 23 PENNSYLVANIA CLASS DEFINITION

28.     The class of similarly situated employees sought to be certified as a class

under Fed. R. Civ. P. 23 is defined as:

> all current and/or former persons employed by one or more of
> Defendants in Pennsylvania to sell cellular service and related
> equipment in Defendants' Verizon authorized retail stores and were not
> paid overtime wages for hours worked more than 40 in a workweek.
> The Class Action Period is the period ending at any time in the two-year
> time period immediately preceding the date on which this action is filed
> to the date final judgment in this action is entered.

## COVERAGE UNDER THE FLSA

29.     At all times hereinafter mentioned, Defendants are and have been
employers within the meaning of 29 U.S.C. §203(d).

30.     At all times hereinafter mentioned, Defendants are and have been an
enterprise within the meaning of 29 U.S.C. §203(r).

31.     At all times hereinafter mentioned, Defendants have been an enterprise
engaged in commerce or in the production of goods or services for commerce within
the meaning of 29 U.S.C. §203(s)(1), in that said enterprise has and has had employees
engaged in commerce or in the production of goods for commerce, or employees
handling, selling, or otherwise working on goods or materials that have been moved
in or produced for commerce by any person and in that said enterprise has had and has
an annual gross volume of sales made or business done of not less than $500,000
(exclusive of excise taxes at the retail level which are separately stated).

7

32.     At all times hereinafter mentioned, Deardorff, Chapman and all those similarly situated, were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207.

## FACTS

33.     Defendants employed Deardorff as a Sales Representative at stores in Hanover, PA, Hummelstown, PA and Waynesboro, PA to sell Verizon cellular service and related equipment.

34.     Defendants employed Chapman as a Sales Representative at a store in Tarboro, NC to sell Verizon cellular service and related equipment.

35.     Defendants employ Sales Representatives in their stores across the country.

**Sales Representative Compensation**

36.     Defendants paid Deardorff, Chapman, and other Sales Representatives a set hourly rate for every recorded hour of work.  Their wages varied from pay period to pay period depending on the hours that they worked.

37.     Defendants did not pay Deardorff, Chapman and other Sales Representatives an overtime premium for hours more than 40 in a workweek.  They paid the same hourly wage regardless of whether Deardorff, Chapman and other Sales Representatives worked more or less than 40 hours in a workweek.

38.     Defendants paid Deardorff, Chapman and other Sales Representatives their hourly wages twice a month.

8

39.     Defendants called the hourly pay they paid Deardorff, Chapman and other Sales Representatives a draw against commission.

40.     Defendants treated the hourly wages they paid to Deardorff, Chapman and other Sales Representatives during training, when they were not earning commissions, as a draw against commissions as well.

41.     Deardorff, Chapman and other Sales Representatives earned commissions on products and services they or other Sales Representatives sold.

42.     When Deardorff, Chapman and other Sales Representatives earned commissions in a month Defendants paid them in a check separate from the hourly pay.

43.     Deardorff, Chapman and other Sales Representatives would only receive a commission check if the commissions they earned in the month exceeded the amount they were paid in hourly wages for the month.

44.     If Deardorff, Chapman and other Sales Representatives' commission earnings in a month did not exceed their hourly wages, they would not receive a commission check.

45.     If Deardorff, Chapman and other Sales Representatives' commission earnings in a month were less than their hourly wages, including hourly wages during training, the negative balance would be carried over to the next pay month so that they would have to earn commissions in an amount greater than their hourly wages plus any negative balance before they would receive a commission check for the month.

9

46.     Deardorff, Chapman and other Sales Representatives' negative balances continued to accrue from month to month if their commission earnings did not exceed their hourly wages.

47.     Deardorff and Chapman received commission pay in approximately half the months that they worked for Defendants.

48.     Upon information and belief, most Sales Representatives did not receive commission checks every month. Defendants' wage and hour data records how many Sales Representatives did not receive commission checks every month.

49.     Deardorff and Chapman frequently did not receive commission checks.

50.     Upon information and belief, many Sales Representatives frequently did not receive commission checks. Defendants' wage and hour data records how often Sales Representatives did not receive commission checks.

51.     Upon information and belief, some Sales Representatives never received commission checks. Defendants' wage and hour data records how many Sales Representatives never received commission checks.

52.     If Deardorff, Chapman or other Sales Representatives' negative balance reached a certain level, Defendants could implement a performance improvement plan for the offending Sales Representatives. If offending Sales Representatives did not reduce the negative balance, they risked termination.

53.     If Deardorff, Chapman or other Sales Representatives did not earn commissions in an amount greater than their hourly wages in consecutive months, Defendants could implement a performance improvement plan for the offending Sales

10

Representatives.  If the offending Sales Representatives did not reverse the trend, they would risk termination.

**Sales Representative Hours of Work**

54.    Deardorff, Chapman and other Sales Representatives were scheduled to work certain shift hours each workweek.

55.    The amount of shift hours Deardorff, Chapman and other Sales Representatives were scheduled to work often exceeded 40 hours a workweek.

56.    Defendants' time keeping system was incorporated into their point of sale software and automatically began recording Deardorff, Chapman and other Sales Representatives' work hours for a shift when they logged into Defendants' point of sale program at the beginning of their shift.

57.    Defendants' time keeping system did not automatically begin recording Deardorff, Chapman and other Sales Representatives' work hours when they logged into Defendants' point of sale program at times other than the beginning of their shift.

58.    Defendants' time keeping system automatically signed Deardorff, Chapman and other Sales Representatives out of work when the shift ended even if they remained logged into Defendants' point of sales system or remained in the store working.

59.    Defendants' time keeping system automatically signed Deardorff, Chapman and other Sales Representatives out of work when the shift ended without requiring a contemporaneous acknowledgement by Deardorff, Chapman or other Sales Representatives that they had stopped work.

60.     Deardorff, Chapman and other Sales Representatives regularly worked more than their scheduled hours.  Defendants encouraged Deardorff, Chapman and other Sales Representatives to arrive at work before their shifts began and encouraged them to meet with potential customers outside their scheduled hours to sell services and products.  Deardorff, Chapman and other Sales Representatives routinely stayed past their scheduled hours to complete unfinished work or to close the store and they were required to attend meetings outside their schedule hours.

61.     As a result, Deardorff, Chapman and other Sales Representatives routinely worked unrecorded hours.

62.     Defendants' compensation system discouraged Deardorff, Chapman and other Sales Representatives from reporting unscheduled hours because recording additional hours resulted in a larger draw that they had to cover each month with commissions.  The larger the draw, the more likely they would not be able to cover it with commissions.  If they did not cover their draw, they risked being put into a performance improvement plan and losing their job.

63.     The danger of recording additional hours was even greater once Deardorff, Chapman and other Sales Representatives were put into performance improvement plan because not covering one's draw while in the plan could lead to termination.

64.     Defendants' compensation system provided little incentive to Deardorff, Chapman and other Sales Representatives to record unscheduled hours because Defendants paid any commissions over the hourly draw at approximately the

12

same time they paid the hourly wages. Deardorff, Chapman and other Sales Representatives would receive any wages above the hourly wage around the same time in any case. That minimal advantage was greatly outweighed by the risk of falling short of the draw.

65.     Defendants' time keeping system also discouraged recording additional hours. While the system recorded shift hours automatically, unscheduled hours had to be entered in a more complicated manner and often required the approval of managers who discouraged recording them.

66.     Following their training period, Deardorff and other Sales Representatives were also required, by corporate directive, to spend a half-day a week, outside of their regular shift hours, making calls to Verizon customers. Often, Sales Representatives were not compensated for the hours worked performing these sales calls and encourage not to record the overtime worked performing this task.

67.     Between their recorded and unrecorded work hours, Deardorff, Chapman and other Sales Representatives routinely worked more than 40 hours in a week.

**Retail and Service Exemption**

68.     Defendants did not pay Deardorff, Chapman and other Sales Representatives overtime wages because they relied on the retail and service exemption codified at 29 U.S.C. § 207(i). The exemption in one form or another is incorporated into many state wage-and-hour laws. The exemption, often referred to as the inside sales exemption, has several prerequisites to its application. One of the

13

prerequisites to using the inside sales exemption is that an employer must pay employees an hourly rate that is more than time and one half the applicable minimum wage.

69.     Defendants paid Deardorff and Chapman approximately $11.00 an hour for recorded hours. That is a rate that is only marginally above time and one-half the federal minimum rate of $7.25 an hour (7.25 times 1.5 is $10.88).

70.     Defendants paid other Sales Representatives an hourly rate that was only marginally above the applicable minimum wage for recorded hours.

71.     When Deardorff, Chapman and other Sales Representatives worked unrecorded hours, the actual hourly rate that Defendants paid Deardorff, Chapman and other Sales Representatives was often not more than time and one half the applicable minimum wage.

72.     Defendants were not entitled to apply the inside sales exemption in weeks in which they did not pay Deardorff, Chapman and other Sales Representatives more than time and one half the applicable minimum wage and therefore were required to pay Deardorff, Chapman and other Sales Representatives overtime wages in those weeks but they did not.

73.     Deardorff and Chapman are aware of other current and former employees of Defendants who were subject to these same wage-and–hour practices.

74.     Upon information and belief, Defendants applied these payroll policies and practices company-wide.

14

## FLSA ALLEGATIONS

75.     The Fair Labor Standards Act ("FLSA") requires employers to pay employees overtime compensation at an hourly rate of 150% of an employee's regular rate of pay for hours worked over 40 in a work week.  29 U.S.C. §207.

76.     Defendants have violated, and are violating, the provisions of the FLSA by not paying Deardorff, Chapman and the FLSA Collective Members overtime as required by law.

77.     Defendants knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of failing to pay Deardorff, Chapman and the FLSA Collective Members overtime compensation for all hours worked over 40.

## PENNSYLVANIA MINIMUM WAGE ACT ALLEGATIONS

78.     The Pennsylvania Minimum Wage Act ("PMWA") requires employers to pay employees wages for all hours worked during the regular payday and for all hours worked in excess of 40 in a workweek.  34 Pa. Code § 231.41, *et seq.*

79.     Defendants have violated, and continue to violate, the provisions of the PMWA by their failure to pay Deardorff and all other Sales Representatives all wages owed as required by law.

## NORTH CAROLINA WAGE AND HOUR ACT ALLEGATIONS

78.     The North Carolina Wage and Hour Act ("NCWHA") requires employers to pay employees all wages they are due on the regular payday. N.C. Gen. Stat. Ann. § 95-25.1, *et seq*.

79.    Defendants have violated, and are violating, the provisions of the NCWHA by not paying Chapman and other Sales Representatives all their wages as required by law.

## COLLECTIVE ACTION ALLEGATIONS

80.    Defendants' practice and policy of not paying Sales Representatives overtime wages affects Plaintiffs Deardorff, Chapman and the FLSA Collective Members and is a willful violation of the FLSA.  Many of these employees have worked with Deardorff or Chapman and have reported that they were paid in the same manner and were not paid overtime for all hours worked over 40 per work week as required by the FLSA.

81.    These employees are victims of Defendants' unlawful compensation practices and are similarly situated to Deardorff and Chapman in terms of job duties, pay, and employment practices.

82.    Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee and the alleged violations are evident from Defendants' electronic records.    Thus, Deardorff, Chapman and the FLSA Class Members are similarly situated employees.

83.    The specific job titles or precise job requirements of the FLSA Class Members does not prevent collective treatment.  All employees, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of 40 hours per week at the overtime rate.  Although the

issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

## CLASS ACTION ALLEGATIONS

84.　The PA and NC Class Members identified above are so numerous that joinder of all members is impracticable.

85.　Although the precise number of such persons is not known to Deardorff and Chapman, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

86.　Upon information and belief, the size of the PA and NC Classes numbers more than 40 persons.

87.　Defendants acted or refused to act on grounds generally applicable to the PA and NC Class Members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the PA and NC Classes as a whole.

88.　The Second and Third Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the PA and NC Class Members that predominate over any questions solely affecting individual PA and NC Class Members, including but not limited to:

　　　　a.　whether Defendants failed to pay the PA and NC Class Members their wages due in each pay period;

　　　　b.　whether Defendants correctly calculated and compensated the PA and NC Class Members for hours worked in excess of 40 per workweek;

17

        c.       whether Defendants failed to keep true and accurate time records for all hours worked by the PA and NC Class Members; and

        d.       the nature and extent of PA and NC Class-wide injury and the appropriate measure of damages for the PA and NC Class Members.

89.     The claims of the PA Class Representative, Jessica Deardorff, are typical of the claims of the PA Class Members she seeks to represent and the claims of the NC Class Representative Plaintiff David Chapman, are typical of the NC Class Members he seeks to represent. The PA and NC Class Representatives and the PA and NC Class Members who work or have worked for Defendants have been subjected to their policy and pattern or practice of failing to pay wages due in each pay. Defendants acted and refused to act on grounds generally applicable to the PA and NC Class Members, thereby making declaratory relief with respect to the PA and NC Class Members appropriate.

90.     The PA and NC Class Representatives will fairly and adequately represent and protect the interests of the PA and NC Class Members.

        a.       The PA and NC Class Representatives understands that, as class representative, they assume a fiduciary responsibility to the PA and NC Class Members to represent their interests fairly and adequately.

        b. The PA and NC Class Representatives recognizes that as class representative, they must represent and consider the interests of the PA and NC Class Members just as they would represent and consider their own interests.

91.     The PA and NC Class Representatives understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the PA and NC Class Members.

92.     The PA and NC Class Representatives recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the PA and NC Class Members.

93.     The PA and NC Class Representatives understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

94.     The PA and NC Class Representatives have retained counsel competent and experienced in complex class action employment litigation.

95.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The PA and NC Class Members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of each class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need

19

for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FIRST CAUSE OF ACTION
### FLSA Claims for Failure to Pay Overtime Compensation
### (Brought on Behalf of Plaintiffs Deardorff, Chapman and the FLSA Collective Members)

96.     Plaintiffs Deardorff and Chapman and FLSA Collective Members re-allege and incorporate by reference all allegations in all preceding paragraphs.

97.     Defendants failed to pay overtime wages to Deardorff, Chapman, and the FLSA Collective Members for all the hours they worked more than 40 in a workweek as required by the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. and its implementing regulations.

98.     Defendants' failure to pay proper overtime wages for each hour worked over 40 per week was willful within the meaning of the FLSA.

99.     Defendants' failure to comply with the FLSA overtime protections caused Plaintiffs and the FLSA Collective Members to suffer loss of wages and interest thereon.

## SECOND CAUSE OF ACTION
### PMWA Claims for Failure to Pay Wages When Due
### (Brought on Behalf of Plaintiff Deardorff and PA Class Members)

100.    Plaintiff Deardorff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

101.    Defendants failed to pay all wages earned to Deardorff and PA Class Members as required by the PMWA, 34 Pa. Code § 231 *et seq*.

20

102.   Defendants' failure to comply with PA wage and hour laws caused Deardorff and PA Members to suffer loss of wages and interests thereon.

### THIRD CAUSE OF ACTION
**NCWHA Claims for Failure to Pay Wages When Due**
**(Brought on Behalf of Plaintiff Chapman and NC Class Members)**

103.   Plaintiff Chapman re-alleges and incorporates by reference all allegations in all preceding paragraphs.

104.   Defendants failed to pay all wages earned to Chapman and NC Class Members as required by the NCWHA, NC Gen Stats. § 95-25.1, *et seq*.

105.   Defendants' failure to comply with NC wage-and-hour protections caused Chapman and NC Class Members to suffer loss of wages and interest thereon.

### PRAYER FOR RELIEF

WHEREFORE Plaintiffs Deardorff and Chapman, on behalf of themselves and the Collective, and PA and NC Class Action Members, pray for relief as follows:

A.      A jury trial on all issues so triable;

B.      For an Order recognizing this proceeding as a collective action under §216(b) of the FLSA and ordering notice to the putative class members at the earliest opportunity to ensure class members' claims are not lost to the FLSA statute of limitations;

C.      For an Order finding Defendants liable for unpaid back wages due to Plaintiffs (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs under the FLSA;

21

D.      For an Order awarding Plaintiffs (and those who have joined in the suit) the costs of this action as provided under the FLSA;

E.      For an Order awarding Plaintiffs (and those who have joined in the suit) their attorneys' fees as provided under the FLSA;

F.      For an Order awarding Plaintiffs (and those who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law; and

G.      With respect for the PA class:

i.   Certifying this action as a class action;

ii.  Designating Plaintiff Deardorff as the PA Class Representative;

iii. Declaring that the practices complained of herein are unlawful under Pennsylvania state laws;

iv.  Appointing the undersigned as class counsel;

v.   Ordering appropriate equitable and injunctive relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

vi.  Awarding damages, appropriate statutory penalties, and restitution to be paid by Defendants according to proof;

vii. Awarding pre-judgment and post-judgment interest, as provided by law;

viii. Ordering such other injunctive and equitable relief as the Court may deem just and proper; and

ix.  Awarding Plaintiffs their attorneys' fees and costs of suit, including expert fees and costs.

H.     With respect to the NC Class:

    i.     Certifying this action as a class action;

    ii.     Designating Plaintiff Chapman as the Class Representative;

    iii.     Declaring that the practices complained of herein are unlawful under North Carolina state laws;

    iv.     Appointing the undersigned as class counsel;

    v.     Ordering appropriate equitable and injunctive relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

    vi.     Awarding damages, liquidated damages, appropriate statutory penalties, and restitution to be paid by Defendants according to proof;

    vii.     Awarding pre-judgment and post-judgment interest, as provided by law;

    viii.     Ordering such other injunctive and equitable relief as the Court may deem just and proper; and

    ix.     Awarding Plaintiffs their attorneys' fees and costs of suit, including expert fees and costs.

I.     For an Order granting such other and further relief as may be necessary and appropriate.

Dated:    June 18, 2019

Respectfully Submitted,

Deirdre A. Aaron
daaron@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Molly A. Brooks
(*pro hac vice application forthcoming*)
mb@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Maya S. Jumper
(*pro hac vice application forthcoming*)
mjumper@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Michael J.D. Sweeney, Esq. (*pro hace vice
application forthcoming*)
GETMAN, SWEENEY & DUNN, PLLC
260 Fair Street
Kingston, , NY 12401
phone: (845)255-9370
fax: (845) 255-8649
Email: msweeney@getmansweeney.com

# Exhibit A

# CONSENT TO SUE UNDER THE FLSA

I, Jessica Deardorff, hereby consent to be a plaintiff in an action under the Fair Labor Standards Act, 29 U.S.C. §201 et seq., to secure any unpaid wages, minimum wages, overtime pay, liquidated damages, attorneys' fees, costs and other relief arising out of my employment with Cellular Sales and any other associated parties.

I authorize Getman, Sweeney & Dunn, PLLC, Outten & Golden, LLP, and any associated attorneys as well as any successors or assigns, to represent me in such action.

Dated:   4/28/2019 _____

Signature:   _____

# Exhibit B

## CONSENT TO SUE UNDER THE FLSA

I, David Chapman, hereby consent to be a plaintiff in an action under the Fair Labor Standards Act, 29 U.S.C. §201 et seq., to secure any unpaid wages, minimum wages, overtime pay, liquidated damages, attorneys' fees, costs and other relief arising out of my employment with Cellular Sales and any other associated parties.

I authorize Getman, Sweeney & Dunn, PLLC, Outten & Golden, LLP, and any associated attorneys as well as any successors or assigns, to represent me in such action.

Dated: 04/30/19

Signature: