**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JESSICA DEARDORFF, et al.**, | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 19-2642-KSM** |
| **CELLULAR SALES OF KNOXVILLE, INC., et al.,** | |
| Defendants. | |

## <u>MEMORANDUM</u>

**MARSTON, J.**                                                                                        **August 25, 2020**

Plaintiffs Jessica Deardorff and David Chapman, on behalf of themselves and all others similarly situated, filed this class action lawsuit against Defendants Cellular Sales of Knoxville, Inc. (CSOKI), Cellular Sales of Pennsylvania (CSPA), and Cellular Sales of North Carolina, LLC (CSNC), alleging that Defendants failed to pay them proper overtime compensation, in violation of the Fair Labor Standards Act ("FLSA") and the respective Pennsylvania and North Carolina statutes.  (Doc. No. 33.)  During their tenures as Cellular Sales employees, Deardorff worked in Pennsylvania and Chapman worked in North Carolina.  (*Id.* at ¶¶ 11, 15, 33–34.)

In September 2019, CSPA moved to compel individual arbitration of Deardorff's claims and to dismiss or transfer Chapman's and the opt-in Plaintiffs' claims.  (Doc. Nos. 12, 43.) Shortly thereafter, in November 2019, CSOKI and CSNC moved to dismiss Plaintiffs' claims for lack of personal jurisdiction, or in the alternative, to compel individual arbitration or dismiss or transfer Plaintiffs' claims.  (Doc. No. 65.)  In doing so, Defendants CSOKI and CSNC argue that personal jurisdiction over CSOKI is lacking because it is merely a passive holding company with no connection to Plaintiffs, Plaintiffs' employment, their claims, or Pennsylvania, and that

jurisdiction over CSNC is also improper.  (Doc. Nos. 12, 43.)  In response, Plaintiffs contend that

we have personal jurisdiction over CSOKI because, according to them, CSOKI is a party to

Plaintiffs' employment contracts and is registered as a fictitious name in Pennsylvania.  (Doc.

No. 77.)  Plaintiffs also seek leave for the parties to engage in limited discovery, to the extent we

find that the evidence proffered is insufficient to state a *prima facie* case of personal jurisdiction

over CSOKI.  (*Id.*)

This Court held oral argument on August 4, 2020, during which both parties agreed that

we should decide the motion for personal jurisdiction before the motion to compel arbitration.

(Oral Argument Tr. at 13:25–14:24; 41:8–14.)  The parties also agree that this Court does not

have personal jurisdiction over Cellular Sales of North Carolina.  (*See* Doc. No. 65-1 at pp. 23–

28; Doc. No. 77 p. 5 n.1; Oral Argument Tr. at 36:11–37:4.)  Therefore, we presently consider

whether we can exercise personal jurisdiction over CSOKI, and whether limited jurisdictional

discovery is appropriate.

For the reasons discussed below, the Court dismisses CSNC as a defendant from this case

and grants Plaintiffs' request for limited jurisdictional discovery, with modifications to the scope

of the specific requests.

## I.

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a

claim for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "The burden of demonstrating

the facts that establish personal jurisdiction falls on the plaintiff," *Metcalfe v. Renaissance*

*Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation marks and citations omitted),

and the plaintiff must do so with "'reasonable particularity,'" *Batista v. O'Jays, Inc.*, Civil

Action No. 18-0636, 2019 WL 400060, at *3 (E.D. Pa. Jan. 30, 2019) (quoting *Mellon Bank*

*PSFS, Nat'l Ass'n v. Farino*, 960 F.3d 1217, 1223 (3d Cir. 1992)).  When a court does not hold an evidentiary hearing, as is the case here, the plaintiff need only state a *prima facie* case of personal jurisdiction.  *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *Metcalfe*, 566 F.3d at 330.

In reviewing a Rule 12(b)(2) motion, "'a court must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'"  *Lionti v. Dipna, Inc.*, Civil Action No. 17-01678, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)); *see also Metcalfe*, 566 F.3d at 330; *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).  Nonetheless, "once a defendant has raised a jurisdictional defense, the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper."  *Metcalfe*, 566 F.3d at 330.  In other words, to establish that personal jurisdiction exists and survive a Rule 12(b)(2) motion to dismiss, a plaintiff may *not* merely rely on the allegations in its complaint.  *See Liontl*, 2017 WL 2779576, at *1 ("The plaintiff may not rely on the bare pleadings alone in order to withstand a defendant's motion to dismiss for lack of personal jurisdiction; instead, the plaintiff must present competent evidence, such as sworn affidavits, to support its jurisdictional allegations.  The plaintiff must respond to the defendant's motion with actual proofs; affidavits which parrot and do no more than restate the plaintiff's allegations . . . do not end the inquiry." (internal quotation marks and citations omitted)); *Pendergrass-Walker v. Guy M. Turner, Inc.*, Civil Action No. 16-5630, 2017 WL 2672634, at *3 (E.D. Pa. June 21, 2017) ("When a defendant raises the defense of the court's lack of personal jurisdiction, the plaintiff bears the burden of coming forward with sufficient facts to establish that jurisdiction is proper.  To meet this burden, a plaintiff may not rest on mere allegations in the complaint, but must support the jurisdictional allegations with

affidavits or other competent evidence." (internal quotation marks and citations omitted)); *see also Goodway Grp. v. Sklerov*, Civil Action No. 18-0900, 2018 WL 3870132, at *3 (E.D. Pa. Aug. 15, 2018); *Gutierrez v. N. Am. Cerruti Corp.*, Civil Action No. 13-3012, 2014 WL 6969579, at *2 (E.D. Pa. Dec. 9, 2014); *Yearwood v. Turner Constr. Co.*, Civil Action No. 09-5945, 2011 WL 570003, at *2 (E.D. Pa. Feb. 15, 2011).

## II.

A district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which the court sits.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *see also Mellon Bank*, 960 F.2d at 1221; *Neff v. PKS Holdings, Inc.*, No. 5:18-cv-1826, 2019 WL 3729568, at *3 (E.D. Pa. Aug. 8, 2019). Pennsylvania's long-arm statute authorizes courts to assert personal jurisdiction to the fullest extent allowed under the United States Constitution.  42 Pa. Const. Stat. Ann. § 5322(b); *see also O'Connor*, 496 F.3d at 316; *D'Jamoos*, 566 F.3d at 102.   Under the Due Process Clause of the Fourteenth Amendment, for a court to exercise personal jurisdiction over a non-resident defendant, the defendant must "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (citation omitted); *see also O'Connor*, 496 F.3d at 316 ("[I]n determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" (citation omitted)); *D'Jamoos*, 566 F.3d at 102 (same).

There are two types of personal jurisdiction:  general jurisdiction and specific

jurisdiction.  *O'Connor*, 496 F.3d at 317.  "A court has general jurisdiction over a foreign corporation when that corporation has 'continuous and systematic' contacts with the forum state, such that the corporation can be considered 'at home' in that state."  *Key Ingredient Catering LLC v. World Cup Packaging*, Case No. 5:19-cv-01178, 2019 WL 3252948, at *2 (E.D. Pa. July 19, 2019) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  As the inquiry is focused on whether a corporation is 'at home' in the forum state, the corporation's contacts with the state need not relate to the plaintiff's cause of action.  *Metcalfe*, 566 F.3d at 334.  "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business."  *Kurz v. Holiday Hosp. Franchising, LLC*, Civil Action No. 19-2129, 2019 WL 5068646, at *3 (E.D. Pa. Oct. 9, 2019) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  Although corporations may be 'at home' elsewhere in an "exceptional case," *see Daimler*, 571 U.S. at 139 n.19, the Third Circuit has recognized that there is a high bar to do so, *see Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) ("[I]t is incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.").

In contrast, specific jurisdiction exists where the claims arise from or relate to the defendant's contacts with the forum state.  *Kurz*, 2019 WL 5068646, at *3.  To determine whether specific jurisdiction exists, courts in this Circuit consider whether (1) the defendant "purposefully directed its activities at the forum"; (2) the litigation "arise[s] out of or relate[s] to at least one of those activities"; and (3) if "the exercise of jurisdiction otherwise comports with fair play and substantial justice."  *O'Connor*, 496 F.3d at 317 (internal quotation marks and citations omitted); *see also D'Jamoos*, 566 F.3d at 102.

"Jurisdictional analysis must be specific to each defendant.  A plaintiff is required to

show that each defendant moving to dismiss has sufficient contacts with the forum state, even when their corporate family collectively has the necessary contacts." *Neff*, 2019 WL 3729568, at *4 (citations omitted).

III.

As noted above, the parties agree that this Court does not have personal jurisdiction over Cellular Sales of North Carolina (*see* Doc. No. 65-1 at pp. 23–28; Doc. No. 77 p. 5 n.1; Oral Argument Tr. at 36:11–37:4), and therefore we dismiss CSNC as a defendant from this case.

As to CSOKI, however, Plaintiffs first argue in their opposition brief that "on the pleadings, [they] have satisfied their burden to establish a *prima facie* showing of personal jurisdiction." (Doc. No. 77 at p. 2.) Even though we must construe Plaintiffs' allegations as true and disputed facts in Plaintiffs favor, we note (and Defendants aptly observe) that Plaintiffs did not actually cite to *any* allegations in the Amended Complaint (or any other pleading, for that matter) to support their contention that they have met their burden on the pleadings alone. It is only in their sur-reply that Plaintiffs point out that they alleged that "[t]he PA [] [] Class Representative[] . . . and the PA [] [] Class Members who worked for Defendants [inclusive of CSOKI] were subjected to their policy and pattern or practice of failing to pay wages due in each pay [period]" and that "Defendants' practice and policy of not paying Sales Representatives' overtime wages affects Plaintiffs Deardorff . . . and the FLSA Collective Members." (Doc. No. 88 at p. 6 (citing Doc. No. 33 at ¶¶ 80, 81, 89).)

In any event, by making such a claim, Plaintiffs reveal a failure to grasp the applicable standard and a lack of understanding as to what their burden entails. *See, e.g.*, *Metcalfe*, 566 F.3d at 330 ("[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper."); *Time Share Vacation Club v.*

6

*Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies . . . [A]t no point may a plaintiff rely on bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations."); *Goodway Grp.*, 2018 WL 3870132, at *3 (same); *see also Metcalfe*, 566 F.3d at 330 ("[T]he Metcalfes did not merely rest on their pleadings but rather submitted a sworn affidavit and other documentary evidence in support of a finding of personal jurisdiction over [the defendant].").  Plaintiffs also ignore the fact that here Defendants' 12(b)(2) motion included a lengthy Declaration by one of CSOKI's officers, Pamela White (Doc. No. 65-3).  *See Kurz*, 2019 WL 5068646, at *2 ("To counter opposing affidavits, plaintiffs may not repose upon their pleadings in this manner.  Rather, they must counter defendant's affidavits with contrary evidence[.]" (internal quotation marks and citations omitted)).

Turning to the parties' substantive arguments, Defendants claim that CSOKI lacks sufficient minimum contacts with Pennsylvania to be subject to jurisdiction here.  According to Defendants, CSOKI is merely a passive holding company of various subsidiaries, including CSPA, LLC:

> CSOKI is the holding company of various subsidiary companies ('Cellular Sales Subsidiaries'), including CSNC, LLC and CSPA, LLC, which provide retail sales of Verizon Wireless services and related equipment and accessories (the 'Business Operations') in various states, including . . . Pennsylvania.  CSOKI is incorporated in Tennessee and only serves as the holding company of its subsidiary companies.  CSOKI does not conduct the Business Operations.

(Declaration of Pamela White, CFO of CSOKI, Doc. No. 65-3 at pp. 2–3, ¶ 4.)  Ms. White also avers that CSOKI did not employ Plaintiffs nor set their pay schedules.  (*See, e.g.*, *id.* at pp. 2–3, ¶ 2 ("CSOKI does not employ sales representatives."); *id.* at p. 5, ¶¶ 28, 32 ("Plaintiff Jessica

Deardorff was employed by CSPA, LLC as a sales representative from May of 2017 to December of 2017 . . . CSOKI was not involved in any way in Jessica Deardorff's employment with CSPA, LLC or any work that Jessica Deardorff performed as a sales representative.  CSOKI did not hire or supervise Deardorff, set her rate of pay or work schedule, dictate the terms of her employment, pay her compensation, or terminate her employment.").)

Defendants assert that general jurisdiction is lacking because CSOKI is incorporated in Tennessee, and it also maintains its principal place of business in Tennessee.  (Doc. No. 65-1 at pp. 29–31.)  Plaintiffs appear to concede that we do not have general jurisdiction over CSOKI, as their arguments focus *exclusively* on whether it is appropriate for us to exercise *specific* jurisdiction over CSOKI.  (*See* Doc. No. 77 at pp. 7–12; *see also* Doc. No. 88 (declining to mention general jurisdiction and focusing on the specific jurisdiction three-pronged test).)  We find that, at this point, Plaintiffs have not argued or shown that this is an "exceptional" case where general jurisdiction exists, given that CSOKI is not incorporated in Pennsylvania, nor does it maintain a principal place of business here.  *See Daimler*, 571 U.S. at 139 n.19; *see also Chavez*, 836 F.3d at 223.

Next, Defendants contend that specific jurisdiction is lacking because CSOKI is a passive holding company with no connection to Pennsylvania or the parties in this case.  (Doc. No. 65-1 at pp. 28–29.)  Plaintiffs counter that they have met their burden of showing that specific jurisdiction exists here because CSOKI has purposefully directed its business efforts at Pennsylvania, pointing to Deardorff's Dealer Compensation Agreement (DCA),[1] which, they argue, "bears the name of CSOKI as the contractual entity."  (Doc. No. 77. at p. 8; *see also* Oral

---

[1] Deardorff's DCA bears the signature Jessica Cohen, which Defendants represent (and Plaintiffs do not dispute) was Deardorff's last name at the time she signed the agreement.  (*See, e.g.*, Doc. No. 12 at p. 10 n.2; Doc. No. 65-3 at p. 5, ¶ 29.)

Argument Tr. at 37:6–38:5 ("[B]ecause holding company or not, [CSOKI] signed the plaintiff Deardorff's DCA"); Doc. No. 88 at pp. 7–8 ("CSOKI is the only entity named in the DCA").) Plaintiffs also argue that the DCA "demonstrates CSOKI's intent to engage job-seekers, like Deardorff, in this forum's workforce and purposefully enter into contractual employment agreements with them in Pennsylvania."  (Doc. No. 77 at pp. 8–9.)

Deardorff's DCA reads:  "The terms and conditions set forth in this DEALER COMPENSATION AGREEMENT (this 'Agreement') apply to all sales representatives (each, a 'Dealer') *employed by any subsidiary operating company* ('Cellular Sales') of Cellular Sales of Knoxville, Inc."  (Doc. No. 12-3 at p. 94 (emphasis added).)  First, we note that the parties to the contract are Cellular Sales and the Dealer (here, Deardorff), and the DCA defines Cellular Sales as "*any subsidiary operating company*" of CSOKI, not as CSOKI itself.  Second, CSOKI is not mentioned elsewhere in the DCA, nor did it (or any other Cellular Sales entity) sign the DCA.  Rather, the remainder of the agreement refers *only* to the defined term Cellular Sales.  Because Cellular Sales is defined as "any *subsidiary* operating company" of CSOKI, we are unpersuaded by Plaintiffs' contentions that the DCA provides sufficient support for us to exercise specific jurisdiction over CSOKI.

Plaintiffs also argue that they have satisfied each of the three prongs of the specific jurisdiction test.  We do not agree.  In their attempts to show that they have satisfied the first prong of the specific jurisdiction test—that is, that CSOKI "purposefully directed" its business activities at Pennsylvania—Plaintiffs claim that "CSOKI owns and controls the operation of approximately 22 retail locations in Pennsylvania, employs hundreds of Pennsylvania residents, and conducts business with countless Pennsylvania residents," and that "CSOKI administered, oversaw and directed the sale of retail products in this forum, on real property owned or

9

maintained by CSOKI in the forum."  (Doc. No. 77 at p. 9; *see also id.* at p. 10 ("CSOKI has . . . entered into, renewed, and maintained contractual employment agreements with hundreds of Cellular Sales employees who sell retail products and services in 22 locations across the state of Pennsylvania"); Oral Argument Tr. at 37:6–38:5.)  As to the second prong—that is, the connection of Defendants' business activities to the instant litigation—Plaintiffs allege that CSOKI "creat[ed], direct[ed], implement[ed], and maint[ained] . . . the related employment records, and oversaw . . . the administration of the challenged compensation policy, which CSOKI commissioned in all of its Pennsylvania locations," and that it "knowingly initiated . . . binding contractual relationships with hundreds of individuals in Pennsylvania and directed the implementation of the compensation policy Plaintiffs now challenge."  (Doc. No. 77 at p. 10.)

But Plaintiffs do not cite any evidence to support these assertions.  (*See id.* at pp. 9–10; *see also* Oral Argument Tr. at 38:6–19 (conceding that Plaintiffs did not submit any affidavits).)  For example, nowhere in their response or sur-reply did Plaintiffs provide this Court with the basis for its assertion that CSOKI owns and controls 22 retail operations across Pennsylvania and, as a result, they cannot overcome Defendants' averment, through Ms. White's declaration, that "CSOKI does not operate any offices, stores, or locations in Pennsylvania" (Doc. No. 65-3 at p. 2, ¶ 7.)  *See Kurz*, 2019 WL 5068646, at *2; *Katz v. DNC Servs. Corp.*, Civil Action No. 16-5800, 2017 WL 5885672, at *2 (E.D. Pa. Nov. 29, 2017) ("Once the plaintiff's allegations are contradicted by opposing affidavit, [the plaintiff] must present similar evidence in support of personal jurisdiction").  As another example, Plaintiffs did not offer any evidence showing that CSOKI directed the implementation of the compensation policy at issue.  Because Defendants have raised a jurisdictional defense, merely relying on unsupported statements, without more, is insufficient.  *See, e.g.*, *Metcalfe*, 566 F.3d at 330; *Liontl*, 2017 WL 2779576, at *1 ("The plaintiff

must respond to the defendant's motion [to dismiss for lack of personal jurisdiction] with actual proofs.").

One of the few pieces of evidence that Plaintiffs proffer is a search results page of the Pennsylvania Department of State records, showing that an entity called Cellular Sales is registered as a "fictitious name," and that the corresponding address is the same as CSOKI's Knoxville, Tennessee headquarters.  (Doc. No. 77-1, Ex. A.)  Citing to Exhibit A and the Pennsylvania jurisdictional statue, 42 Pa. Const. Stat. Ann. § 5301, Plaintiffs claim that CSOKI "holds itself out as an entity registered to conduct business in Pennsylvania" and has "physically entered the forum as a registered corporate entity."  (Doc. No. 77 at pp. 10–11.)  In their reply, Defendants produced the actual "Application for Registration of Fictitious Name" that was filed with the Department of State, which, they argue, demonstrates that CSPA, not CSOKI, filed the registration of the fictitious name "Cellular Sales."  (Doc. No. 81 at p. 10, 15–19, Ex. 1.)  We are required to construe all disputes of fact in Plaintiffs favor, but we note that even if CSOKI filed the registration of the fictitious name, Plaintiffs have not cited a single case showing that registration of a fictitious name constitutes registration of a foreign entity or that it authorizes CSOKI to conduct business in this state.

Plaintiffs also argue that "CSOKI's web page . . . demonstrates that CSOKI engages consumers through its website, including those accessing it from Pennsylvania, to 'provid[e]' 'products and/or services' to Pennsylvania consumers."  (Doc. No. 88 at p. 11.)  Notably, Plaintiffs failed to cite any case law to support this contention.  Further, Plaintiffs' argument misses the point:  for specific jurisdiction to exist, *this* litigation must *arise out of or relate to* those of CSOKI's business activities that were directed at this forum (here, CSOKI's website). But Plaintiffs do not argue (and presumably cannot argue) that Deardorff's FLSA and

Pennsylvania Minimum Wage Act (PMWA) claims arise out of or relate to CSOKI's website.

At bottom, Deardorff's FLSA and PMWA claims stem from her employment with the Cellular

Sales entities, and are entirely untethered from Internet sales or customers' engagement with

CSOKI's website.  We also note that Deardorff fails to argue that she applied for her sales

position through the website, nor is there any other basis for us to find a nexus between her

claims and the website.

  Even if Deardorff's claims were related to CSOKI's website, the website alone would not

suffice to show that specific jurisdiction exists in this case.  The opinion in *Zippo Manufacturing

Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), is the "seminal authority

regarding personal jurisdiction based upon the operation of an Internet website." *Toys "R" Us,

Inc.*, 318 F.3d at 452; *see also Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714,

720 (E.D. Pa. 2015).  Under the analysis set forth in *Zippo*, courts consider where on a "sliding

scale of commercial interactivity" the website falls:

> At one end of the spectrum are situations where a defendant clearly does business
> over the Internet.  If the defendant enters into contracts with residents of a foreign
> jurisdiction that involve knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper.  At the opposite end are
> situations where a defendant has simply posted information on an Internet Web
> site which is accessible to users in foreign jurisdictions.  A passive Web site that
> does little more than make information available to those who are interested in it
> is not grounds for the exercise of personal jurisdiction.

952 F. Supp. at 1124; *see also Toys "R" Us*, 318 F.3d at 452, 454 ("As *Zippo* and the Courts of

Appeals decisions indicate, the mere operation of a commercially interactive web site should not

subject the operator to jurisdiction anywhere in the world.  Rather, there must be evidence that

the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly

targeting its web site to the state, knowingly interacting with residents of the forum state via its

web site, or through sufficient related contacts."); *Utz Quality Foods, LLC v. Dirty South BBQ*

*Co.*, Civil Action No. 20-1146, 2020 WL 4334903, at *3 (E.D. Pa. July 28, 2020) ("[T]here must be 'something more' beyond [the defendant's] website simply allowing product sales into Pennsylvania to show that [the defendant] purposefully directed its activities at Pennsylvania.").

In *Ackourey v. Sonellas Custom Tailors*, the Third Circuit found that the "level of interactivity and commercial nature of [the defendants'] website was minimal," where the website listed a travel schedule and only allowed potential customers to email requests for appointments and it did not allow customers to place orders, make payments, or engage in any business transactions.  573 F. App'x 208, 212 (3d Cir. 2014).  The Third Circuit explained that the "low degree of commercial activity render[ed] Defendants' website essentially passive," and affirmed the district court's holding that the plaintiff failed to meet his burden of showing personal jurisdiction existed.  *Id.* at 212–13.  In addition, the court noted that even if the ability to schedule appointments on the website was sufficiently interactive under *Zippo*, the plaintiff failed to provide any evidence that Pennsylvania residents used the website to schedule appointments.  *Id.* at 212.

The same analysis applies with equal force here.  A review of the website www.cellularsales.com shows that the level of interactivity and commercial nature of the website is minimal.  By way of example, when a user scrolls through the various products listed on the Products page of the website, the user cannot purchase the product directly through the Cellular Sales website; rather, the user is directed to input his or her zip code to "Find a Store" nearby through which to purchase the product.  Alternatively, if the user clicks the "Shop Verizon" button, he or she is taken to Verizon's own website and may purchase the product that way.  The results are similar upon our review of the Plan and Deals pages.  As in *Ackourey*, the website is "essentially passive."  And even if the requisite level of interactivity was met, Plaintiffs have

13

provided no evidence indicating that Deardorff and other Pennsylvania residents used the website to view products or plans and to find stores at which to purchase those products.[2]

IV.

Because we find that Plaintiffs have not satisfied their burden of showing, by competent evidence, that we may exercise personal jurisdiction over CSOKI, we now turn to their request for jurisdictional discovery.

The Third Circuit has instructed that if "the plaintiff's claim is not clearly frivolous as to the basis for personal jurisdiction, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Metcalfe*, 566 F.3d at 336; *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (holding that the parties should be permitted to engage in limited jurisdictional discovery, "which we ordinarily allow when a plaintiff's claim to personal jurisdiction is not clearly frivolous" (internal quotation marks and citations omitted)); *Toys "R" Us*, 318 F.3d at 456 ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.  If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to jurisdictional discovery should be sustained."  (internal quotation marks and citations omitted)).  Jurisdictional discovery is "particularly appropriate" where, as here, the defendant is a corporation.  *Metcalfe*, 566 F.3d at 336 (holding that the plaintiffs ought to have the opportunity to conduct personal discovery, where the plaintiffs' claim was not frivolous and they were "faced with the difficult

---

[2] The website also has a Careers page, through which a user can directly apply for a position in Pennsylvania by entering in a Pennsylvania zip code and clicking the "Apply" button.  But again, Plaintiffs do not argue that Deardorff or other Cellular Sales employees applied for their sales representative positions through the website.

task of trying to establish personal jurisdiction over a corporation").

Here, viewing all the facts in Plaintiffs' favor and mindful of *Metcalfe*, this Court will permit Plaintiffs to conduct jurisdictional discovery. First, at least one court in this District has permitted jurisdictional discovery where the plaintiffs provided evidence that the defendant may have a fictitious name registration in Pennsylvania. *See Sowonski v. Amtrak*, No. Civ. A. 98-6390, 1999 WL 431100, at *3 (E.D. Pa. June 23, 1999) (allowing jurisdictional discovery before providing a final ruling on the defendant's motion to dismiss for lack of personal jurisdiction).[3]

Second, Plaintiffs contend that we may have jurisdiction over CSOKI on an alter ego theory of liability (*see* Doc. No. 88 at p. 11 n.3), and we find that Plaintiffs' evidence in the record raises at least the possibility of personal jurisdiction over CSOKI based on an alter ego theory. *See Shuker*, 885 F.3d at 781 ("[T]he alter ego theory . . . instructs that, if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary" (citations omitted)); *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) ("A court exercises personal jurisdiction over a parent corporation through its personal jurisdiction over a subsidiary by way of the alter ego theory."). In determining whether a subsidiary is the alter ego of the parent, courts often consider a number of factors, including, among others, ownership of all or most of the stock of the related corporation, commonality of officers or directors between the two corporations, and use of a common marketing image, trademark, or logo. *See id.* at 471; *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009); *see also CALA*

---

[3] We note that although Defendants provided evidence showing that the application at issue for the registration of the fictitious name was made by CSPA, and not CSOKI, we are constrained, at this juncture, to consider all disputed facts in Plaintiffs favor.

*Diamonds, LLC v. HRA Grp. Holdings*, Civil Action No. 17-cv-1136, 2017 WL 4222886, at *8 (E.D. Pa. Sept. 22, 2017) (finding that a defendant's declaration, "stating that he is the Group Executive for HRA Group, HRA USA, and Crossworks," provided "a strong indication that Crossworks is merely an alter ego of HRA Group").

In *Shuker v. Smith & Nephew*, the Third Circuit held that the plaintiffs were entitled jurisdictional discovery to explore their alter ego theory of general personal jurisdiction, where the subsidiary was indisputably subject to the court's general jurisdiction. 885 F.3d at 780–81. In so ruling, the Third Circuit explained that the plaintiffs' allegations, taken as true, "paint[ed] a plausible picture of control by [the parent] over the [subsidiary]" but also noted that the declarations of executives of the parent and subsidiary contradicted many of those allegations. *Id.* at 781. The Third Circuit reasoned: "Because the executives' declarations create a factual dispute regarding the basis for personal jurisdiction over [the parent], it is appropriate here to allow the parties and the District Court to 'revisit' the factual issues by means of limited jurisdictional discovery." *Id.* at 781–82.

Here, although Defendants submit that that "CSPA is a self-governing company with an independent board of directors" and that "CSOKI does not exercise control over CSPA, LLC, and both companies operate as separate and distinct entities" (*see* Doc. No. 65-3 at p. 2, ¶ 7), Ms. White's declaration also provides some support for at least two of the alter ego factors. For example, Ms. White avers that she is the President, Treasurer, and Secretary of Cellular Sales Subsidiaries, including CSPA, and also serves as the Chief Financial Officer, Vice President, and Secretary of CSOKI (*see id.* at p. 2, ¶ 2), showing at least some overlap in the officers between the companies.[4] Likewise, Plaintiffs assert that Ms. White (formerly Pamela Kimball) was

---

[4] Contrary to Plaintiffs' assertion in their sur-reply (*see* Doc. No. 88 at p. 9), Defendants do represent in Ms. White's declaration that CSOKI and CSPA "do not maintain the same managers, employees or bank

CSOKI's registered agent at the same time that she served as President of CSPA.  (*See* Doc. No. 88 at pp. 1156–57, Ex. C; Doc. No. 77-2, Ex. B; Doc. No. 65-3 at p. 2, ¶ 2; *see also* Doc. No. 33 at ¶ 19; Doc. No. 88 at p. 9.)  In her declaration, Ms. White also submits that "CSOKI is the owner and sole member of CSPA."  (*Id.* at p. 2, ¶ 6.)  Further, Plaintiffs note that a Notice of Amendments (Doc. No. 65-3, p. 110, Ex. B-7) that Defendants aver "was issued and distributed to existing sales representatives on April 10, 2015" and was incorporated into the April 10, 2015 version of DCA (Doc. No. 65-1 at p. 5, ¶ 25) bears the same "Cellular Sales" insignia used on CSOKI's website and is located on the building registered to CSOKI in Knoxville, Tennessee. (Doc. No. 88 at p. 10.)[5]  In their opposition, Plaintiffs also point out that it appears that CSPA operates under the "fictitious name" of an entity called Cellular Sales, which shares the same Knoxville, Tennessee address as CSOKI.  (Doc. No. 77 at p. 11 n.3.)  Also, during oral argument, Plaintiffs suggested that the entities may be using their names interchangeably.  (Oral Argument Tr. at 38:16–39:4.)

Plaintiffs could have presented more evidence from the named Plaintiffs as to their alleged contacts with CSOKI or its employees, yet taken together, Plaintiffs' claim that we may exercise personal jurisdiction over CSOKI is not clearly frivolous.  As Plaintiffs have the burden to establish personal jurisdiction, we will allow jurisdictional discovery.

We will, however, limit the scope of the jurisdictional discovery, as Plaintiffs' discovery requests are not confined to Pennsylvania—the only state we are concerned with for

accounts" (*see* Doc. No. 65-3 at p. 2, ¶ 7.)

[5] That being said, we note that Plaintiffs do not specifically allege that Deardorff or other Pennsylvania plaintiffs received this notice of amendment.  Indeed, Plaintiffs allege that Deardorff did not begin working for the Cellular Sales entities until May 2017 (Doc. No. 33 at ¶ 11), and the evidence indicates that Deardorff would have signed the version of the DCA that went into effect on June 1, 2016, since she signed her DCA on May 15, 2017 (*see* Doc. No. 12-3 at p. 2, ¶¶ 11–13, 16–17.)

jurisdictional purposes—nor do they necessarily even relate to Plaintiffs' claims.  *See Shuker*, 885 F.3d at 781 n.20 ("We note that jurisdictional discovery 'is not a license for the parties to engage in a fishing expedition' and that the District Court should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction.'" (citation omitted)).

      Plaintiffs seek discovery in the following categories of information:

  1)  records of *all* states in which CSOKI or its agents are registered and conduct business, either under the names [sic] Cellular Sales of Knoxville, or other names;

  2)  CSOKI's corporate structure to discern where individuals or divisions tasked with creation, implementation and oversight of the challenged policies sit and conduct operations in this forum; and

  3)  a detailed summary of *any and all* advertising, marketing or business communications sent to the forum state at CSOKI's direction.

(Doc. No. 77 at pp. 12–13 (emphasis added).)

      We will permit discovery as to the second request as it stands.  However, we will modify the scope of the first request, as follows, so that it is targeted at the forum state:  Plaintiffs may seek discovery of any records showing that CSOKI or its agents are registered in Pennsylvania and conduct business in the state, either under the name Cellular Sales of Knoxville, or other names.

      As to the third request, as Defendants correctly note, Plaintiffs' proposal "would grant Plaintiffs discovery as to every single business communication ever directed by CSOKI towards the Commonwealth, regardless of the relevance of any such contacts to this suit."  (Doc. No. 81 at pp. 11–12.)  We agree.  Plaintiffs have not shown how Plaintiffs' FLSA and PMWA claims could arise out of or be related to "*any and all* advertising, marketing or business communication sent to the forum state at CSOKI's direction."  We understand Plaintiffs' argument that

marketing communications may bear on one or more of the alter ego factors (namely, whether there is a "unified marketing image" or that the "parent uses the subsidiary as a marketing division," *see In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d at 589) but we find the third request to be overbroad as worded and, accordingly, we deny it.

Plaintiffs may serve requests for production of documents and interrogatories directed at the subjects discussed above within fourteen (14) days of entry of our order.  Defendants shall respond to such requests within 28 days of service.  In addition to written discovery, Plaintiffs may take the deposition of Pamela White, and may conduct one Federal Rule of Civil Procedure 30(b)(6) deposition of CSOKI, all of which must be directly related to personal jurisdiction. Plaintiffs shall file a supplemental brief no later than October 26, 2020.  Any reply is due by November 9, 2020.  If Plaintiffs fail to file a supplemental brief, this Court will grant CSOKI's motion to dismiss for lack of personal jurisdiction.

V.

For the foregoing reasons, we dismiss CSNC as a defendant and defer ruling on the remainder of Defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 65) until after jurisdictional discovery.

An appropriate order follows.