**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JESSICA DEARDORFF, et al.**, | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 19-2642-KSM** |
| **CELLULAR SALES OF KNOXVILLE, INC., et al.**, | |
| Defendants. | |

**MEMORANDUM**

MARSTON, J.                                                February 9, 2022

On June 18, 2019, Plaintiffs Jessica Deardorff and David Chapman, on behalf of themselves and all others similarly situated, filed a complaint bringing a class action lawsuit against Defendants Cellular Sales of Knoxville, Inc. ("CSOKI"), Cellular Sales of Pennsylvania ("CSPA"), and Cellular Sales of North Carolina, LLC ("CSNC"). Plaintiffs allege that Defendants failed to pay them overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and the respective Pennsylvania and North Carolina statutes. (Doc. No. 33.)

In September 2019, CSPA moved to compel individual arbitration of Deardorff's claims and to dismiss or transfer Chapman's and the opt-in Plaintiffs' claims. (Doc. Nos. 12, 43.) Shortly thereafter, in November 2019, CSOKI and CSNC moved to dismiss for lack of personal jurisdiction. (Doc. No. 65.) The parties agreed that the Court should decide CSOKI's motion to dismiss for lack of personal jurisdiction before CSPA's motion to compel arbitration.

On August 25, 2020, the Court dismissed CSNC as a Defendant and found that limited jurisdictional discovery was appropriate as to whether this Court may exercise personal

jurisdiction over CSOKI.  (Doc. Nos. 133–34.)  After the parties engaged in jurisdictional

discovery, by a Memorandum dated February 1, 2022, the Court granted CSOKI's motion to

dismiss for lack of personal jurisdiction, finding that CSPA was not an alter ego of its parent,

CSOKI.  (Doc. No. 162.)

     CSPA is the only remaining Defendant in this case, and the Court now turns to its motion

to compel arbitration[1] (Doc. Nos. 12-1, 43, 56).  Plaintiffs oppose the motion.[2]  (Doc. Nos. 52,

61.)

     For the reasons discussed below, the Court grants the motion.

**I.     Factual Background**

     Deardorff and Chapman worked as sales representatives for Cellular Sales; Deardorff

worked at a retail location in Pennsylvania, and Chapman worked at a retail location in North

Carolina.  (Doc. No. 33 at ¶¶ 1, 5–6.)  They claim that they worked more than 40 hours per week

and that, as a result of company-wide pay policies and practices, they were denied overtime in

violation of the FLSA, the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania

Wage Payment and Collection Law ("PWPCL"), and the North Carolina Wage and Hour Act

("NCWHA").  (*Id.* at ¶¶ 2–6.)  Deardorff and Chapman bring these claims on behalf of

themselves and all others similarly situated.  (*Id.*)

---

[1] The Court held oral argument on CSPA's motion to compel arbitration, along with CSOKI's motion to dismiss for lack of personal jurisdiction, on August 4, 2020.  (*See* Doc. No. 126.)

[2] Notably, while the motions were pending, Plaintiffs' counsel initiated four separate arbitration proceedings on behalf of four individuals who had previously filed Consent to Sue forms in this action. (*See* Doc. No. 148-1 at ¶ 6.)  Those arbitration proceedings were initiated pursuant to the *very same arbitration clause* that is at issue in this case—i.e, the clause in Deardorff and Chapman's Dealer Compensation Agreements ("DCAs") that Plaintiffs claim is invalid and unenforceable here.  (*See generally* Doc. No. 52-1.)

#### A.  Deardorff's DCA

On May 15, 2017, Deardorff signed a DCA.  (Doc. No. 12-3, Ex. B-7 at pp. 94–101.)

The DCA outlines how a dealer (i.e., a sales representative) will be compensated, including how

commissions will be calculated and paid and how dealers should record their time.  (*See, e.g.*, *id.*

at ¶¶ 2–11.)  Deardorff's DCA also contains a lengthy dispute resolution provision:

15. **DISPUTE RESOLUTION**

a. *Applicable Rules*.  Any controversy or dispute between Dealer and Cellular Sales or any of its owners, employees, officers, agents, affiliates, or benefit plans, arising from or in any way related to Dealer's employment by Cellular Sales, or the termination thereof, including but not limited to the construction or application of this Agreement, shall be resolved exclusively by final and binding arbitration administered by JAMS under its Employment Arbitration Rules & Procedures and the JAMS Policy Employment Arbitration Minimum Standards of Procedural Fairness then applicable to the dispute.  These rules and other information can be found at www.jamsadr.com.  Dealer is encouraged to review these rules prior to executing this Agreement.  The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, validity, applicability, enforceability, or formation of this Agreement.

b. *All Disputes Must be Arbitrated*.  It is the intent of the parties hereto that all disputes between them must be arbitrated, expressly including, but not limited to, (i) any dispute about the interpretation, validity or enforcement of this Agreement, (ii) any claim of employment discrimination under federal or state law, such as, but not limited to, discrimination based on age, disability, national origin, race, or sex, (iii) any claim for compensation or benefits, including any claim under the Fair Labor Standards Act, or any other federal or state statute or regulation related to payment of wages, (iv) any claim under the Family Medical Leave Act or similar state law, (v) any claim under the Americans with Disabilities Act or similar state law, (vi) any claim under the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, or similar state law, and (vii) any other claim of any nature, whether contractual, tortious, common-law, statutory, or regulatory, arising out of, or in any way related to, Dealer's employment with Cellular Sales, the termination thereof, or any other matter incident thereto.  The intent of this provision is that all disputes between the Parties, of any nature, touching on or relating to this Agreement or any aspect of Dealer's employment with Cellular Sales, including the termination thereof, must be resolved solely by arbitration; provided, however, nothing herein

shall preclude the filing of a charge with the National Labor Relations Board.

. . .

f.  *Waiver of Class and Collective Standing or Action*. Dealer agrees that, in the presentation and resolution of any dispute between Dealer and Cellular Sales, as well as against Cellular Sales' other employees, owners, directors or officers, Dealer expressly waives the right to participate in any class or collection action and expressly agrees that Dealer will resolve any dispute or claim in a single action between only Dealer, Cellular Sales, and other Cellular Sales' employees, owners, directors or officers pursuant to the provisions of this Section. Accordingly, Dealer shall neither serve as a class or collective action representative nor shall Dealer join, seek, or agree to join, actively or passively, or participate in any capacity in any class or collective action, no matter how small or minor, of a claimants' or plaintiffs' group, against Cellular Sales and/or Cellular Sales' other employees, owners, directors or officers.

(*Id.* at ¶ 15.)

### B.  *Chapman's DCA*

On March 7, 2017, David Chapman electronically signed a DCA. (Doc. No. 12-3, Ex. B-8 at pp. 102–09.) He also electronically signed another DCA on December 26, 2017. (Doc. No. 12-3, Ex. B-9 at pp. 110–18.) Chapman's March 2017 DCA contains the same dispute resolution provision that was in Deardorff's DCA. (*See* Doc. No. 12-3, Ex. B-8 at ¶ 15.) Chapman's December 2017 DCA's dispute resolution provision includes minor differences. (*See* Doc. No. 12-3, Ex. B-9 at ¶ 16.)

### C.  *Parties' Contentions*

CSPA has moved to compel Deardorff to arbitrate her claims on an individual basis, pursuant to the dispute resolution provision in her DCA. (Doc. No. 12-1.) CSPA asserts that because there is a delegation clause within the arbitration provisions, an arbitrator must decide gateway issues of arbitrability, not the court. (*Id.* at pp. 18–19; Doc. No. 56 at pp. 7–10.) In its

4

motion, CSPA also asks this Court to dismiss or transfer Chapman and the Opt-In Plaintiffs'[3] claims under Federal Rule of Civil Procedure 12(b)(3).  (Doc. No. 12-1 at pp. 22–25.)

In response, Plaintiffs contend the arbitration provisions cannot be enforced against Deardorff and Chapman because the provisions and the collective and class action waivers they contain violate the National Labor Relations Act ("NLRA").  (Doc. No. 52-1 at pp. 8–18.)  In addition, Plaintiffs argue that CSPA's motion to transfer or dismiss Chapman's claims is premature and that the Opt-in Plaintiffs should be entitled to limited discovery on the issue of arbitrability under Rule 56.  (*Id.* at pp. 21–22.)

## II.    Standard of Review

As a threshold matter, when deciding a motion to compel arbitration, a court must first determine the applicable standard of review:  the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the summary judgment standard under Federal Rule of Civil Procedure 56.  *See Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017); *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 772 (3d Cir. 2013).     "When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776.  "An arbitration clause may be deemed 'apparent'" when the contract in which the arbitration clause appears is "integral to" or relied upon in the complaint.  *Lawson v. City of Philadelphia*, Civil Action No. 18-1912, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019) (applying Rule 12(b)(6) standard where "several of Plaintiff's claims, including breach of contract, appear to be based on the parties' contractual relationship formed by the [Joint Venture

---

[3] In total, over 90 Consent to Sue Forms have been filed on the docket.  (*See generally* ECF Case No. 19-2642.)  However, six of those individuals have withdrawn.

Agreement]," which contained a "Provision for Arbitration," reasoning that the Joint Venture Agreement "is integral to Plaintiff's Complaint"); *see also Sandford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117–18 (3d Cir. 2015) (concluding that the Rule 12(b)(6) standard applied to the motion to compel because the plaintiff "sued for breach of a written Engagement Agreement, which included an arbitration clause" and "the affirmative defense of arbitrability was therefore apparent from the face of the complaint"). On the other hand, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability," after which the court should consider the motion under the Rule 56 summary judgment standard. *Id.*; *see also Parker v. Briad Wenco, LLC*, Civil Action No. 18-04860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ("If a party attaches an authentic arbitration agreement to a Motion to Compel arbitration, the Court must apply the Rule 12(b)(6) standard unless the plaintiff responds to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." (cleaned up)); *Silfee*, 696 F. App'x at 578 ("In his complaint, Silfee alleged that ERG violated Pennsylvania law by paying his wages through a debit card system that imposed various fees. ERG then submitted the terms and conditions that Silfee received from the payroll vendor along with that card, which included the arbitration issue in this case. With a concededly authentic arbitration agreement attached to the complaint, the Rule 12(b)(6) standard was appropriate unless Silfee produced 'additional facts sufficient to place the agreement to arbitrate in issue.'"); *Lawson*, 2019 WL 934976, at *3.

The Court concludes that the Rule 12(b)(6) standard is the appropriate standard to apply here. In their amended complaint, Plaintiffs claim that they were denied overtime, in violation of

the FLSA, the PWPCL, and the NCWHA.  (Doc. No. 33.)  In turn, CSPA submitted Plaintiffs'

DCAs, which contain the arbitration provisions at issue in this case.  (Doc. No. 12-2, Exs. B-8 &

B-9 (Chapman DCA); Doc. No. 12-3, Ex. B-7 (Deardorff DCA)[4].)  The DCAs are integral to

Plaintiffs' claims that they were denied overtime because the DCAs outline how sales

representatives will be compensated for their services.

      In addition, because CSPA attaches the DCA to its motion to compel, the Rule 12(b)(6)

standard governs unless Plaintiffs point to "additional facts sufficient to place the agreement to

arbitrate at issue."  Plaintiffs have not done so.  It is true that Plaintiffs imply in their opposition

that they did not actually sign the DCAs.  (*See, e.g.*, Doc. No. 42-1 at pp. 7–8 ("The Agreement,

*alleged* to be electronically executed agreement [sic] by Jessica Deardorff, formerly Jessica

Cohen, is attached to Cellular Sales' motion.  Additionally, Cellular Sales contends that Plaintiff

Chapman executed a similar version of the same Agreement at the start of his term of

employment with Defendants on March 7, 2017, and again on December 26, 2017.  These

agreements, *alleged* to be electronically executed by David Chapman, are attached to Cellular

Sales' motion as well." (emphasis added)); *see also* Doc. No. 61 at p. 1 n.1.)  But, critically,

Plaintiffs offer *no* facts to support their contention that Deardorff and Chapman did not actually

execute the DCAs, which bear their electronic signatures.  For example, nowhere do Plaintiffs

point to declarations or affidavits where Deardorff and Chapman submit that they never received

and/or signed the DCAs, nor do they provide any other evidence.[5]  In addition, an electronic

---

[4] Deardorff's DCA bears the signature Jessica Cohen, which Defendants represent (and Plaintiffs do not dispute) was Deardorff's last name at the time she signed the agreement.  (*See, e.g.*, Doc. No. 12 at p. 10 n.2; Doc. No. 65-3 at p. 5, ¶ 29.)

[5] *Contra Guidotti*, 716 F.3d at 777–79 ("Despite her signed acknowledgment, [the plaintiff] asserts that in reality the Account Agreement was not supplied to her and she accordingly was unaware of its arbitration provision. . . .  [The plaintiff's] denial is not entirely unsupported.  Rather, she pointed out to the District Court, and has noted again on appeal, that the one-page SPAA and every page of the ARA . . . have an

signature constitutes a valid means of assent.  *See, e.g.*, 73 Pa. Stat. & Cons. Stat. § 2260.305 ("An electronic record or electronic signature is attributable to a person if it was the act of a person.  The act of a person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."); N.C. Gen. Stat. § 66-319(a) (same); *Dicent, v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019) ("Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register legal assent."); *cf. Gomez v. Rent-A-Center, Inc.*, Civ. No. 2:18-cv-1528-KM-SCM, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018) (rejecting the plaintiff's argument that she "may not have signed the agreement because there [was] an 'electronic signature'" and noting that "an actual, handwritten signature is not necessary" (cleaned up)).

Last, Plaintiffs do not dispute that the Rule 12(b)(6) standard applies.  (*See generally* Doc. No. 52-1 (declining to address CSPA's argument that the motion to dismiss standard applies against Deardorff and Chapman); *see also* Doc. No. 52-1 at pp. 18–19 (citing *Parker* for the Rule 12(b)(6) standard and contending that under that standard, CSPA's motion fails because it is apparent from the face of the DCAs that the arbitration clause is not enforceable).)  For these reasons, the Court will apply the Rule 12(b)(6) standard.

"The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief."  *Guidotti*, 716 F.3d at 772.  "[I]f, accepting all factual allegations as true and construing

---

encoded 'DocuSign' header line, but that the Account Agreement . . . does not have it. . . . [E]ven without an affidavit, the evidence concerning the DocuSign headers is not insubstantial. . . . We accordingly hold that [the plaintiff] came forth with enough evidence in response to the Appellants' arbitration motion to trigger . . . the summary judgment standard found in Rule 56.").

the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not

entitled to relief under any reasonable reading of the complaint," then a complaint should be

dismissed under Rule 12(b)(6). *Id.*; *see also id.* at 777 ("Under the Rule 12(b)(6) standard, there

would be no reading of the complaint, no matter how friendly to [the plaintiff], that could rightly

relieve her of the arbitration provision in the Account Agreement[.]").

## III.   Discussion

### A.  Legal Standards

i.   The Federal Arbitration Act[6]

The Federal Arbitration Act ("FAA") "reflects the fundamental principle that arbitration

is a matter of contract" and "requires courts to enforce [arbitration agreements] according to their

terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Henry Schein, Inc. v. Archer*

*& White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *see also* 9 U.S.C. § 2 ("A written provision in . .

. a contract evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract.").  "The FAA

establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM*

*Constr. Co. v. N.J. Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir.

2020); *see also Caruso v. J&M Windows, Inc.*, Civil Action No. 18-770, 2018 WL 4579691, at

*2 (E.D. Pa. Sept. 24, 2018) ("Because the FAA is reflective of a strong federal policy favoring

arbitration, courts must 'rigorously enforce agreements to arbitrate.'" (quoting *Dean Witter*

---

[6] CSPA asserts that the FAA applies (*see* Doc. No. 12-1 at pp. 16–17), and Plaintiffs do not dispute this
(*see generally* Doc. No. 52-1; *see also id.* at p. 21 (arguing that the Court "is empowered by the FAA
to . . . determine the enforceability of the challenged provisions, notwithstanding the existence of a
delegation clause").  Accordingly, the Court does not address choice of law.

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985))).  Nonetheless, because the FAA puts arbitration agreements on "equal footing" with other contracts, like contracts, "they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  *Rent-A-Center*, 561 U.S. at 67–68 (citations omitted).

Under § 4 of the Act, a party "aggrieved" by the "failure" or "refusal of another to arbitrate under a written agreement for arbitration may petition" the court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement."  9 U.S.C. § 4.  Once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," it "shall" order "the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.*; *MZM Constr. Co.*, 974 F.3d at 401 (explaining that § 4 "mandate[es] that the court be 'satisfied' that an arbitration agreement exists" before directing the parties to proceed to arbitration); *see also Henry Schein*, 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (citing 9 U.S.C. § 2)).

ii.  <u>Gateway Issues of Arbitrability</u>

"When a dispute arises, the parties sometimes may disagree not only about the merits of the dispute but also about the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute.  Who decides that threshold arbitrability question?" *Henry Schein*, 139 S. Ct. at 526.  Although "questions of arbitrability . . . are presumed to be questions for judicial determination," *see Quilloin v. Tenet HealthSys. Phila.*, 673 F.3d 221, 228 (3d Cir. 2012) (cleaned up), ultimately "the question of who decides arbitrability is itself a question of contract" and under the FAA, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes,"

*Henry Schein*, 139 S. Ct. at 530.

At bottom, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 139 S. Ct. at 530 (citations omitted); *see also Rent-A-Center*, 561 U.S. at 68–69 & n.1 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.  This line of cases merely reflects the principle that arbitration is a matter of contract.  There is one caveat.  [We have] held that courts should not assume that the parties agreed to arbitrate unless there is clear and unmistakable evidence that they did so." (cleaned up)); *MZM Constr. Co.*, 974 F.3d at 386 ("Under the [FAA], questions about the 'making of an agreement to arbitrate' are for the courts to decide unless the parties have clearly and unmistakably referred those issues to arbitration in a written contract whose formation is not in issue."); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) ("[P]arties are free to assign the resolution of these issues to an arbitrator.  But that delegation requires 'clear and unmistakable' evidence of the parties' intent." (cleaned up)).  Therefore, if a valid agreement to arbitrate exists and it "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 530; *see also id.* at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.").

In the seminal decision *Rent-A-Center West, Inc. v. Jackson*, the Supreme Court clarified the distinction between a more general agreement to arbitrate and an agreement to arbitrate threshold issues of arbitrability specifically, often known as a delegation clause.  561 U.S. at 68–

72; *see also Quillon*, 673 F.3d at 229 ("To eliminate the confusion caused by an agreement to arbitrate nested within another agreement to arbitrate, the *Rent-A-Center* Court found it necessary to distinguish between the overall arbitration agreement (the 'contract'), and the agreement to arbitrate arbitrability (the 'delegation clause').").  The delegation clause "is simply *an additional, antecedent agreement* the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70 (emphasis added).  "Think of a delegation provision as a mini-arbitration agreement within a broader arbitration agreement within a broader contract, something akin to Russian nesting dolls." *MZM Constr. Co.*, 974 F.3d at 399 (cleaned up).

The *Rent-A-Center* Court then considered whether the delegation clause was valid under § 2 of the FAA.  561 U.S. at 70.  It explained the two different types of validity challenges under § 2:  "One type challenges specifically the validity of the agreement to arbitrate and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* (cleaned up).  But, critically, "only the first type of challenge is relevant to a court's determination of whether an arbitration agreement at issue is enforceable." *Id.* "That is because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irremovable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing the specific agreement arbitrate," as the arbitration provision is severable from the rest of the contract. *Id.* at 70–71.

The *Rent-A-Center* Court then applied the severability rule to the facts before it—the

12

delegation clause within the arbitration agreement. *See id.* at 72 ("In this case, the underlying contract is itself an arbitration agreement. But that makes no difference. Application of the severability rule does not depend on the substance of the remainder of the contract."). There, the "written provision . . . to settle by arbitration a controversy" the Court was asked to enforce was the delegation clause; the delegation clause "gave the arbitrator 'exclusive authority to resolve any dispute relating to the . . . enforceability of this Agreement.'" *Id.* at 71. The Supreme Court held that the delegation clause was severable from the rest of the arbitration agreement; therefore, unless the party opposing arbitration "challenged the delegation provision specifically," it must be treated as valid under § 2 and enforced under § 4, "leaving any challenge as to the validity of the arbitration agreement as a whole to the arbitrator." *Id.* at 72; *see also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 227 (3d Cir. 2018) ("[C]ontesting the validity of an arbitration agreement as a whole, without specifically disputing the delegation clause therein, is not sufficient to challenge the delegation provision. Without a specific challenge to the delegation provision, the court must treat the provision as valid and enforce it[.]" (citing *Rent-A-Center*, 561 U.S. at 70–75)).

Following *Rent-A-Center*, courts in this Circuit have routinely applied the Supreme Court's holding that unless the party opposing arbitration challenges the delegation clause specifically, the delegation clause must be treated as valid under § 2 of the FAA and questions of arbitrability must be decided by the arbitrator. *See, e.g.*, *Carrone v. UnitedHealth Grp.*, No. 20-2742, 2021 WL 3520809, at *3 (3d Cir. Aug. 11, 2021) ("[The plaintiff] could have challenged the delegation provision itself. Her argument about illusoriness might have succeeded if it had been directed to the delegation provision. But it was not."); *Romanov v. Microsoft Corp.*, Civil Action No. 21-03564, 2021 WL 3486938, at *5 (D.N.J. Aug. 9, 2021) ("Plaintiff seeks to

invalidate the entire Agreement on the grounds that it is unconscionable.  But Plaintiff does not specifically or explicitly challenge the delegation of authority to the arbitrator.  Plaintiff cannot avoid arbitration without challenging the conscionability of the delegation provision itself."); *Caruso*, 2018 WL 4579691, at *4 ("[B]ecause the arbitration provision of the Sales Representative agreement plainly commits the issue of arbitrability to the arbitrator, and because none of Plaintiff's challenges focus exclusively on this delegation, arbitration must be compelled."); *Pocalyko v. Baker Tilly Virchow Crouse, LLP*, Civil Action No. 16-3637, 2016 WL 6962875, at *4 (E.D. Pa. Nov. 29, 2016) ("Plaintiff's second challenge relates directly to Article 21(d), which limits the remedies available to the parties at arbitration.  This challenge gets closer to targeting the agreement to arbitrate.  However, as the Supreme Court instructed in *Rent-a-Center*, it is important to distinguish between an agreement relating to arbitration, and a specific agreement to arbitrate issues of arbitrability.  Here, Plaintiff's challenge relates to the agreement governing the conduct of arbitration itself, rather than the agreement to arbitrate issues of arbitrability."); *cf. MacDonald v. CashCall, Inc.*, 883 F.3d 220, 227 (3d Cir. 2018) ("Here, unlike in *Rent-A-Center*, MacDonald specifically challenged the delegation clause.  His Complaint alleges that 'because the arbitration procedure described in the agreement is fabricated and illusory, any provision requiring that the enforceability of the arbitration procedure must be decided through arbitration is also illusory and unenforceable.'  Similarly, his brief opposing Defendants' motion to compel arbitration states that 'the delegation suffers from the same defect as the arbitration provision,' and includes a section discussing this challenge.  These explicit references to the delegation clause are sufficient to contest it."); *Robbins v. Playhouse Lounge*, No. 1:09-cv-08387-NLH-KMW, 2021 WL 2525709, at *7 (D.N.J. June 21, 2021) ("Plaintiff initially puts forward a series of arguments that the arbitration clause and the

14

delegation provision are both procedurally and substantively unconscionable.  Although the delegation provision nominally reserves ruling on such issues regarding the arbitration provision for the arbitrator, the Court finds that Plaintiff, through her repeated contention throughout her opposition brief that these arguments render both the arbitration clause and the delegation provision unconscionable, has sufficiently challenged the delegation provision[.]").

      iii.   <u>Types of Delegation Clauses</u>

"Case law suggests that to demonstrate clear and unmistakable intent of to delegate questions of arbitrability, provisions must be both specific and exclusive.  For example, expressly stating that issues regarding the validity or enforceability of an arbitration agreement shall be determined by an arbitrator is likely sufficient." *Jean v. Bucknell Univ.*, No. 4:20-CV-01722, 2021 WL 1521724, at *5 (M.D. Pa. Apr. 16, 2021) (collecting cases); *see also, e.g.*, *Coulter v. Experian Info. Sols., Inc.*, Civil Action No. 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021) ("Here, the Arbitration Provision's Delegation Clause provides that 'all issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision' and grants the arbitrator 'exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.'  This provision constitutes a 'clear and unmistakable' delegation clause under *Henry Schein*[.]"); *Colon v. Conchetta, Inc.*, Civil Action No. 17-0959, 2017 WL 2572517, at *3 (E.D. Pa. June 14, 2017) (concluding that "the language could not be clearer that the parties have agreed that the arbitrator will decide all threshold issues," where the arbitration provision stated, "The Parties expressly agree that the arbitrator will decide all issues in the first instance, including but not limited to all gateway questions of arbitrability concerning . . . [among other

15

things] the validity and enforceability of the Agreement as a whole" and "the validity and enforceability of the arbitration provision"). "Expansive language that arbitration shall govern any dispute of any kind that arises in connection with or relating to the arbitration agreement may also be helpful." *Jean*, 2021 WL 1521724, at *5 (cleaned up).

In addition, parties may "clearly and unmistakably" delegate arbitrability issues to an arbitrator by incorporating by reference the American Arbitration Association ("AAA") or the Judicial Arbitration and Mediations Services ("JAMS") rules. *See, e.g.*, *Richardson*, 811 F. App'x at 103 ("Silva's agreement provides that 'all controversies, disputes or claims between Coverall . . . and Franchisee . . . shall be submitted promptly for arbitration' and that 'arbitration shall be subject to . . . the then current Rules of the American Arbitration Association for Commercial Arbitration.' Clearly and unmistakably then, the AAA Rules govern the arbitration of any dispute between Silva and Sujol. And Rule 7(a) of the AAA Rules states that 'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.' That provision 'is about as clear and unmistakable as language can get.'"); *VR Consultants, Inc. v. J.P. Morgan Chase & Co.*, Civil Action No. 20-cv-6110, 2021 WL 5494373, at *2 (D.N.J. Nov. 23, 2021) ("The inclusion of AAA or JAMS rules in the DAA and Online Agreement constitutes 'clear and unmistakable evidence that the parties agreed to delegate arbitrability.' Therefore, here, the parties' inclusion of AAA and JAMS procedures in the contested arbitration agreement is clear evidence that they intended the arbitrator to decide questions related to scope." (citation omitted)); *Romanov*, 2021 WL 3486938, at *5–6 ("Under the straightforward terms of the Agreement, Plaintiff clearly and unmistakably agreed to arbitrate gateway issues: the Agreement expressly incorporates the rules of the AAA, one of which

16

delegates the gateway issue of arbitrability to the arbitrator."); *PPT Research, Inc. v. Solvay USA, Inc.*, Civil Action No. 20-2645, 2021 WL 2853269, at *3 (E.D. Pa. July 7, 2021) (holding that the parties "clearly intended to delegate the question of arbitrability to the arbitrators" where the arbitration provision incorporated by reference the Rules of Arbitration of the International Chamber of Commerce); *Benjamin v. KMB Plumbing & Electrical*, Civil Action No. 3:20-CV-34, 2021 WL 2473845, at *5 (M.D. Pa. June 17, 2021) ("Finally, in a case such as this where the parties expressly incorporate the [AAA] Rules into their agreement, courts should allow the question of arbitrability to be addressed in the first instance in the arbitration forum."); *UBS Sec. LLC v. Prowse*, 20cv217 (JGK), 2020 WL 433859, at *4 (S.D.N.Y. Jan. 27, 2020) (holding that the agreement contained "clear and unmistakable" evidence that the parties intended to delegate questions of arbitrability to the arbitrator, where the agreement explicitly stated that arbitration would be subject to the JAMS Arbitration Rules, defined as including the JAMS Employment Arbitration Rules and Procedures).

Incorporation by reference to JAMS or AAA rules is sufficient because both JAMS and AAA have rules pertaining to their jurisdiction and how they shall have the power to decide issues of arbitrability. *See* AAA Commercial Arbitration Rules and Mediation Procedures, Rule 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(b) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a

preliminary matter."); JAMS Employment Arbitration Rules and Procedures, Rule 11(b)

("Jurisdictional and arbitrability disputes, including disputes over the formation, existence,

validity, interpretation or scope of the agreement under which Arbitration is sought, and who are

proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  Unless the

relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and

arbitrability issues as a preliminary matter.").

### B.  Plaintiff Deardorff

Following the precedent outlined above, the Court will consider whether Deardorff and

CSPA clearly and unmistakably delegated gateway issues of arbitrability to an arbitrator, and

then turn to whether Plaintiffs have sufficiently challenged the delegation provision under *Rent-

A-Center.*[7]

i.    Clear and Unmistakable Delegation

As an initial matter, this Court is persuaded that Deardorff and CSPA clearly and

unmistakably delegated questions of arbitrability to an arbitrator, not to this Court.

Deardorff's DCA (the container contract) contains an arbitration provision (the

arbitration agreement), which in turn contains two clauses that delegate arbitrability disputes to

an arbitrator (the delegation clauses).  (*See generally* Doc. No. 12-3, Ex. B-6.)  Section 15 of

Deardorff's DCA provides in relevant part:

> (a) *Any controversy or dispute between Dealer and Cellular Sales . . . arising from
> or in any way related to Dealer's employment by Cellular Sales, or the
> termination thereof, including but not limited to the construction or application
> of this Agreement, shall be resolved exclusively by final and binding arbitration
> administered by JAMS under its Employment Arbitration Rules & Procedures
> and the JAMS Policy on Employment Arbitration Minimum Standards of
> Procedural Fairness then applicable to the dispute . . . .  The arbitrator shall*

---

[7] Here, where there is no issue as to whether the parties mutually assented to the DCA, we turn directly to
the question of whether the delegation provision clearly and unmistakably commits questions related to
arbitrability to the arbitrator.  *MZM Constr. Co.*, 974 F.3d at 401–02.

> *have exclusive authority to resolve any dispute relating to the interpretation, validity, applicability, enforceability, or formation of this Agreement.*
>
> (b) *It is the intent of the parties hereto that all disputes between them must be arbitrated, expressly including, but not limited to, (i) any dispute about the interpretation, validity or enforcement of this Agreement . . . . The intent of this provision is that all disputes between the Parties, of any nature, touching on or relating to this Agreement or any aspect of Dealer's employment with Cellular Sales, including the termination thereof, must be resolved solely by arbitration*; provided, however, nothing herein shall preclude the filing of a charge with the National Relations Board.

(*Id.* at pp. 99–100 (emphases added).)

The emphasized language could not be clearer:  it compels the conclusion that the parties clearly and unmistakably delegated gateway issues of arbitrability to an arbitrator.  Indeed, the language is similar to other clauses that courts have held to be "clear and unmistakable" evidence that the parties intended to arbitrate arbitrability.  *Compare id.*,[8] *with Coulter*, 2021 WL 735726, at *2, *4 (holding that parties had clearly and unmistakably delegated gateway issues of arbitrability to the arbitrator, where the delegation clause stated "the arbitrator shall have exclusive authority relating to the scope and enforceability of this arbitration provision or any other term of this Agreement"), *and Gomez*, 2018 WL 3377172, at *5 (concluding that the arbitration agreement—which stated that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"—was "a clear statement that the parties agreed to arbitrate all issues," including gateway issues of arbitrability); *see also Caruso*, 2018 WL 4579691, at *3 (concluding that the parties properly delegated the issue of arbitrability to the arbitrator where the arbitration

---

[8] This language is also practically identical to the delegation clause in the *Rent-A-Center* decision.  S*ee Rent-A-Center*, 561 U.S. at 68 (provision stated that "the Arbitrator shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable" (cleaned up)).

provision defined "claim" as "'any and all disputes, claims, or controversies . . . arising under or relating to this agreement, including by way of example and not as a limitation . . . the validity of this agreement or the validity or enforceability of this arbitration provision'" and stated that "[a]ny claim may, at the option of either Company or Employee, be adjudicated by final and binding arbitration"); *Davis v. Uber Tech.*, Civil Action No. 16-6122, 2017 WL 3167807, at *3 (E.D. Pa. July 25, 2017) (concluding that the issue of arbitrability was committed to the arbitrator where the agreement included an arbitration provision that stated, "This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration . . . . Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision").

In addition, the fact that the parties incorporated the JAMS rules into their arbitration agreement by reference independently illustrates that the parties "clearly and unmistakably" delegated threshold issues of arbitrability to an arbitrator. Specifically, Deardorff's agreement states that all disputes "shall be resolved exclusively by final and binding arbitration administered by JAMS under its Employment Arbitration Rules & Procedures." In turn, Rule 11(b) of the JAMS Employment Arbitration Rules and Procedures states that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." As in *Richardson*, this provision "'is about as clear and unmistakable as language can get.'" 811 F. App'x at 103.[9]

---

[9] "Nor is the rest of [Deardorff's] contract so ambiguous or unclear that the meaning of the [JAMS] Rules becomes murky." *Id.* This is nowhere near the "murky" set of the circumstances that the Third Circuit

For the foregoing reasons, the Court finds that Deardorff and CSPA clearly and unmistakably delegated arbitrability disputes to an arbitrator.[10]

ii.    Failure to Challenge the Delegation Clause

Next, this Court must consider whether Deardorff has challenged the delegation clause specifically.[11]  She has not.

In their opposition, Plaintiffs make two chief arguments:  first, that the arbitration provision's class and collective waiver clause unlawfully interferes with their rights to engage in

---

cautioned about in *Richardson*, where a contract may require a "daisy-chain" set of inferences.  *See id.* at n.2 ("Even where an agreement incorporates the AAA Rules, a contract might still otherwise muddy the clarity of the parties' intent to delegate.  For example, in *Chesapeake Appalachia*, we held that the mere incorporation of unspecified AAA rules did not demonstrate an intent to delegate arbitrability in a class action.  We explained that finding clear and unmistakable evidence in that case required jumping from 1) the contract, to 2) the reference to unspecified AAA rules to 3) the AAA Commercial Rules and, lastly, to 4) the AAA Supplementary rules, which ultimately vested an arbitrator with the authority to decide class arbitrability.  But Silva's contract requires no such 'daisy-chain' of inferences.").

[10] The Court notes that neither party addresses whether questions of *class* arbitrability have been delegated to the arbitrator.  *See Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 335 (3d Cir. 2014) (noting the "fundamental differences" between bilateral/individual arbitration versus classwide arbitration, and holding that the parties did not delegate issues of class arbitrability to the arbitrator where the employment agreements only provided for "arbitration of any dispute or claim arising out of or relating to their employment" and were "silent as to the availability of classwide arbitration and whether the question should be submitted to the arbitrator"); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 758, 761 (3d Cir. 2016) (finding that the leases were silent as to the availably of class arbitration and that incorporation by reference of the AAA rules was insufficient to show by clear and unmistakable evidence that an arbitrator should decide questions of class arbitrability).  For that reason, the Court does not consider such issues in this Memorandum.

[11] In *MZM Construction Co. v. New Jersey Building Laborers Statewide Benefit Funds*, the Third Circuit held that when a party challenges the existence of the container contract or its assent to that contract, *Rent-A-Center* does not apply and a party opposing arbitration need not challenge the delegation provision specifically.  974 F.3d at 400 ("Lack of assent to the container contract necessarily implicates the status of the arbitration agreement, when the container contract and the arbitration provision depend on the same act for their legal effect.  It is thus inevitable that a court will need to decide questions about the parties' mutual assent to the container contract to satisfy itself that an arbitration agreement exists and vice versa.  That is no less true when the container contract includes or incorporates a delegation provision.  Given that *Rent-A-Center* made clear that the FAA operates on the delegation provision as it does on any other arbitration agreement, we . . . conclude that the degree of specificity required in *Rent-A-Center* does not apply here.").  For the reasons discussed above, we find that *MZM* does not apply here, as the formation of the DCA is not at issue.

protected activity under the NLRA (Doc. No. 52-1 at pp. 9–14), and second, that the arbitration

provision can be reasonably inferred to prohibit employees from seeking relief before

administrative agencies, such as the Equal Employment Opportunity Commission or the

Departments of Justice and Labor[12] (*id.* at pp. 14–18).  Critically, neither of these arguments

specifically challenges the delegation clauses.  Rather, they pertain to the enforceability of the

arbitration provision as a whole.  (*See, e.g.*, *id.* at pp. 18–19 ("Based on the record before it, this

Court has authority to deny Cellular Sales' motion to compel arbitration, with respect to Plaintiff

Deardorff, pursuant to a facially unenforceable arbitration provision.").)

    *Colon v. Conchetta, Inc.* is instructive.  There, the plaintiff was an exotic dancer who

performed at various entities that did business together. 2017 WL 2572517, at *1.  She filed a

class action lawsuit against the entities, alleging that they violated federal and Pennsylvania state

wage violations by improperly classifying exotic dancers as independent contractors and failing

to pay overtime compensation.  *Id.*  The defendants moved to compel arbitration under the terms

of the parties' agreement, which included an arbitration provision that the court held clearly and

unmistakably delegated questions of arbitrability to the arbitrator.  *Id.* at *3.  As is relevant to

this case, the plaintiff in *Colon* challenged the agreement and arbitration provision, arguing,

among other things, that the arbitration agreement violated the NLRA because it contained a

class action waiver, thereby "inhibit[ing] the dancers' collective adjudication rights."  *Id.* at *4.

---

[12] In making this argument, Plaintiffs rely on subsection b of the arbitration provision, which states:  "It is the intent of the parties hereto that that all disputes between them must be arbitrated, expressly including, but not limited to, (i) any dispute about the interpretation, validity or enforcement of this Agreement . . . The intent of this provision is that all disputes between the Parties, of any nature, touching on or relating to this Agreement or any aspect of Dealer's employment with Cellular Sales, including the termination thereof, must be resolved solely by arbitration; provided, however, nothing herein shall preclude the filing of a charge with the National Labor Relations Board ["NLRB"]."  (Doc. No. 12-3, Ex. B-7 at ¶ 15(b).) Plaintiffs point out that the provision expressly carves out only those charges filed with the NLRB, not charges filed with other administrative or governmental agencies.

The court concluded that the plaintiff had not specifically challenged the delegation provision. *Id.* The court reasoned that the plaintiff's arguments "suffer[ed] from the same deficiency as the plaintiff's arguments in *Rent-A-Center*" because they "concern[ed] the Agreement overall or simply the arbitration provision in general," as opposed to the delegation clause specifically. *Id.* The court then explained that the plaintiff's argument that the arbitration provision violated the NLRA "miss[ed] the mark because a valid delegation clause is severable from the remainder of the contract and is unaffected by the contract's validity" and granted the defendants' motion to compel arbitration. *Id.*

So too here. As in *Colon*, Plaintiffs' argument that the arbitration provision is unenforceable because its class action waiver provision violates the NLRA "suffers from" a critical "deficiency": it concerns a challenge to the arbitration provision in general, not the delegation clauses specifically. Plaintiffs' exclusive focus on any violation of the NLRA "miss[es] the mark" because the delegation clause is several from the rest of the DCA.

Almost in passing, Plaintiffs state that the delegation clause in Deardorff's DCA is "overly broad." (Doc. No. 52-1 at p. 20 (citing the provision stating, "The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, validity, applicability, enforceability, or formation of this Agreement").) But Plaintiffs do not show that this amounts to a challenge to the delegation clause under the *Rent-A-Center* and *Henry Schein* line of cases. First, Plaintiffs fail to explain how (or cite any authority showing that) a "broad" delegation of authority to the arbitrator renders the delegation clause unenforceable or is a proper challenge to validity under 9 U.S.C. § 2, on equal footing with well-established challenges like unconscionability. To the contrary, at least one court in this Circuit has stated that "[t]here is no legal bar to . . . broad delegation[s] of authority to [an] arbitrator," so long as the "clear and

unmistakable" requirement is met, debunking Plaintiffs' unsupported theory.  *See Gomez*, 2018 WL 3377172, at *5 ("The Arbitration Agreement between Rent-A-Center and Ms. Gomez provides for a broad delegation of all issues:  'The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.'  That is a clear statement that the parties agreed to arbitrate all issues . . . .  There is no legal bar to such a broad delegation of authority to the arbitrator . . . .  Only if the broad delegation of issues to the arbitrator were invalid could she bar referral of those to arbitration.  She has not shown that the agreement's delegation of all remaining issues, even so-called 'gateway' ones, is invalid."); *see also Carrone*, 2021 WL 3520809, at *1 (affirming the grant of a motion to compel arbitration where the parties' arbitration agreement contained a delegation clause "granting broad authority to the arbitrator to rule on threshold questions of the agreement's validity").

After citing to the "overly broad" delegation clause, Plaintiffs argue that Cellular Sales failed "to 'adduce clear and unmistakable evidence that the parties intended to arbitrate questions concerning the validity of the arbitration' and class and collective action waiver provisions specifically,' rather than the Agreement in its entirety," which is "fatal" to Cellular Sales's contention that the court should refer threshold issues of arbitrability to the arbitrator.  (Doc. No. 52-1 at p. 20; *see also id.* (discussing the difference between "a challenge . . . to the arbitration clause itself, and a challenge targeting the contract as a whole" (cleaned up)).[13]  By doing so,

---

[13] Plaintiffs cite to *Puelo v. Chase Bank USA, N.A.*, 605 F.3d 172 (3d Cir. 2010).  (See Doc. No. 52-1 at pp. 19–20.)  But *Puelo* is distinguishable.  In that case, the plaintiffs conceded that they had agreed to arbitrate their disputes; however, they wanted to arbitrate their claims on a *class* basis, even though there was a class action waiver provision in the arbitration agreement, which provided that the arbitrator shall have no authority to proceed on a class or representative basis.  *Id.* at 180–82.  The Third Circuit reasoned that the plaintiffs could not have their cake and eat it, too—in other words, they could not have the district

Plaintiffs conflate the questions of whether the parties clearly and unmistakably delegated gateway issues of arbitrability to the arbitrator and whether the party opposing arbitration challenged the delegation clause specifically—but these are two *separate* analyses.  They also fail to appreciate the concept of nesting and the distinction between a container contract, an arbitration provision, and a delegation clause.  Plaintiffs appear to argue that because they have challenged the arbitration and class action waiver provisions specifically, not the DCA in its entirety, this Court must decide threshold issues of arbitrability.  This is incorrect—the arbitration provision is distinct from the delegation clause (the antecedent agreement, nested within the arbitration provision), so it is of no importance that Plaintiffs challenged the arbitration provision more generally.  *See Pocalyko*, 2016 WL 6962875, at *4 ("Plaintiff's second challenge relates directly to Article 21(d), which limits the remedies available to the parties at arbitration . . . .  However, as the Supreme Court instructed in *Rent-a-Center*, it is important to distinguish between an agreement relating to arbitration, and a specific agreement to arbitrate issues of arbitrability.  Here Plaintiff's challenge relates to the agreement governing the conduct of the arbitration itself, rather than the agreement to arbitrate issues of arbitrability.").

Because Deardorff has failed to specifically challenge the delegation clause, and the delegation clause in her DCA clearly and unmistakably committed threshold issues of

---

court compel them to arbitration given that they opposed enforcement of the express terms of the arbitration agreement (e.g., the class action waiver provision). *Id.* ("The Puelos' argument regarding their class claims is self-contradictory.  In order to present their class claims to an arbitrator, the Puelos needed to obtain a court order that invalidated the Arbitration Agreement's class action waiver and that compelled class arbitration.  This is because unless it addressed the validity of the ban on class arbitration, the District Court could not have ordered the parties to submit their dispute to class arbitration without running afoul of the FAA's directive that arbitration agreements must be enforced in accordance with their terms . . . .  We decline to indulge the Puelos' desire to have it both ways—i.e., to have the District Court compel the parties to arbitrate class claims without first addressing the validity of the class action waiver."). Here, Plaintiffs are not amenable to arbitration in the first instance, nor do they argue that they should be permitted to arbitrate their claims as a class, nor is there a provision expressly stating that an arbitrator lacks authority to proceed over a class.

arbitrability to the arbitrator, the Court grants CSPA's motion to compel Deardorff to arbitration.

### C.  *Plaintiff Chapman*

The arbitration provision, and delegation clause therein, in Chapman's March 2017 DCA is the exact same as that in Deardorff's DCA.  For the reasons discussed above, the Court finds that the delegation clause is valid, that Chapman also agreed to delegate threshold issues of arbitrability to an arbitrator, and that Chapman did not specifically challenge the delegation clause.[14]

However, this Court cannot compel Chapman to arbitrate in North Carolina—the forum that the parties chose in the DCA.  (*See* Doc. No. 12-3, Ex. B-8 at ¶ 15(c) ("The parties agree that any arbitration proceedings shall take place in the county or parish in which the main office of the Market with which Dealer is located, or as otherwise mutually agreed by the Parties."); Doc. No. 12-3, Ex. B-9 at ¶ 16(e) (same).)  *See Port Erie Plastics, Inc. v. Uptown Nails, LLC*, 173 F. App'x 123, 128 (3d Cir. 2006) ("We noted, however, that a party seeking to compel arbitration in a district other than the one selected 'may well be unable to secure an arbitration order in such district court.' . . . .  [T]he majority of district courts to address the issue before us have held that they lacked authority to compel arbitration at all, even in their own districts, when the agreement specifies that arbitration is to take a different venue."); *see id.* at 127 n.4 ("We

---

[14] "In December 2017, Plaintiff Chapman signed a second DCA with arbitration and delegation provisions substantially similar to those in his March 2017.  Moreover, Plaintiffs do not address—or even mention—that difference (or for that matter, Chapman's December DCA).  In any event, for the reasons discussed above, the Court finds that Chapman and CSPA clearly and unmistakably delegated arbitrability issues to the arbitrator.  (*See, e.g.*, Doc. No. 12-3, Ex. B-9 at ¶ 16(a) (stating that "any controversy or dispute between one or more Cellular Sales Parties arising from or in any way related to Dealer's work with any one or more of the Cellular Sales Parties, or the termination therefore, including, but not limited to, (i) any dispute about the interpretation, validity, construction, scope, or enforceability of this Agreement . . . must be resolved exclusively by final and binding arbitration"); *id.* (incorporating by reference the AAA Employment Dispute Resolution Rules).)  *See, e.g.*, *Richardson*, 811 F. App'x at 103 (concluding that delegation was clear and unmistakable where the parties incorporated by reference the AAA Rules).

noted that a 'perplexing dilemma' arises when an agreement 'provides for arbitration outside of the district in which the petition [to compel arbitration] is filed.' . . . [W]e directed courts to 'heed the unambiguous statutory language limiting the district court's power to order arbitration outside of the district.'" (citing *Econo-Carr Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391 (3d Cir. 1974)); *see also MidOil USA, LLC v. Astra Project Finance PTY Ltd.*, Civil Action No. 12-5318, 2012 WL 4794311, at *1 (D.N.J. Oct. 9, 2012) ("The plain language of the arbitration agreement makes clear that if the arbitration clause applies, the arbitration would proceed in New York, not in New Jersey. Because the parties' contract calls for arbitration to occur in New York City, it is beyond this Court's power to compel arbitration.").

The Court will stay this action, pending the arbitrator's decision on threshold issues of arbitrability (i.e., whether the arbitration provision is valid, whether the class action provision is valid, etc.) in Deardorff's case. Because the Court has only determined that the delegation clause is a valid agreement to arbitrate, the Court finds it is premature to dismiss or transfer the Chapman's action at this time.[15]

### D.  Opt-In Plaintiffs

The Court declines to address CSPA's argument that the Opt-In Plaintiffs' claims should

---

[15] The cases CSPA cites in support of transfer or dismissal are factually distinct—none of the cases involve class actions and analyses of delegation clauses/the delegation of arbitrability to an arbitrator. *See Port Erie Plastics*, 173 F. App'x at 127–28 (holding that the district court did not abuse its discretion by rejecting Uptown's judicial estoppel argument and did not err in ordering arbitration to proceed in the district in which the petition to compel was brought; no mention of class action or delegation of arbitrability issues); *Johnson*, 2015 WL 5286234, at *2 (noting that the plaintiff did not dispute that a valid agreement to arbitrate existed but rather argued that his retaliation claims fell outside the scope of the arbitration clause); *Shaffer v. Graybill*, 68 F. App'x 374, 376–77 (3d Cir. 2003) (analyzing the plaintiff's argument that the arbitration agreement was unenforceable because it was a contract of adhesion); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806–12 (7th Cir. 2011) (affirming dismissal under Federal Rule of Civil Procedure 12(b)(3); no mention of delegating threshold issues of arbitrability or class action); *MidOil*, 2012 WL 2794311, at *1–2 (dismissing petition to compel arbitration in New York when the court was located in New Jersey; no mention of delegation clauses of threshold issues of arbitrability or class action).

be dismissed or transferred at this time.  (Doc. No. 12-1 at pp. 25–26.)  First, as noted above, CSPA fails to cite a single case that is analogous to the factual circumstances before this Court with respect to its dismissal or transfer argument.  Second, as noted *supra* footnote 2, there are approximately 90 Opt-In Plaintiffs at this stage—far more than the 23 that existed at the time CSPA filed its initial motion (*see* Doc. No. 12-1 at p. 14).  The Court does not have copies of the DCA's for each Opt-In Plaintiff, nor does it know the location at which each Opt-In Plaintiff worked.  And, as discussed above with respect Chapman, because an arbitrator will be deciding threshold issues of arbitrability in Deardorff's action—and Deardorff's DCA likely shares the same arbitration provision as many other Opt-In Plaintiffs—it is premature to dismiss them at this time.

### E.  Dismissal of Class and Collective Claims

Last, CSPA argues that this Court should dismiss the class and collective action allegations because the DCAs contained a class and collective action waiver, which CSPA claims is "separate and apart from the arbitration clauses."  (Doc. No. 12-1 at p. 26.)  CSPA's position is dubious, given that the class and collection action waiver cited to is, in fact, a subsection of the arbitration provision.  (*See* Doc. No. 12-3, Ex. B-7 at ¶ 15(f); Doc. No. Ex. 12-3, Ex. B-9 at ¶ 16(c).).

In any event, because the Court has found that the delegation clause in Deardorff's DCA is valid and delegates questions of arbitrability to the arbitrator, and therefore compels Deardorff and CSPA to arbitration, the Court cannot then also decide the validity of the class action waiver. *See Coulter*, 2021 WL 735726, at *5 ("Consistent with the Arbitration Provision's Delegation Clause, this Court may not consider the parties' remaining arguments, including Plaintiff's arguments concerning the terms of the agreement and whether Defendant waived its right to

arbitrate.  Those issues are to be resolved by the arbitrator."); *Colon*, 2017 WL 2572517, at *4 (finding that the plaintiff's challenge to the class action waiver was "for the arbitrator to decide, not this Court"); *see also Vilches v. The Travelers Cos.*, 413 F. App'x 487, 492 (3d Cir. 2011) ("As stated, the addition of the disputed class arbitration waiver did not disturb the parties' agreement to refer all employment disputes to arbitration, and, thus, does not bear upon the validity of the agreement to arbitrate.  Assuming binding arbitration of all employment disputes, the contested waiver provision solely affects the type of procedural arbitration mechanism applicable to this dispute.  The Supreme Court has made clear that questions of contract interpretation aimed at discerning whether a particular procedural mechanism is authorized by a given arbitration agreement are matters for the arbitrator to decide." (cleaned up)).  *Contra Coulter*, 2021 WL 735726, at *5 (considering the defendant's argument that the plaintiff's claims should be arbitrated on an individual basis only and that the class action waiver was enforceable because the "the sole exception to the arbitrator's authority under the Delegation Clause" explicitly "allow[ed] a court to decide 'whether this agreement permits class or representative proceedings' if 'putative class or representative claims are initially brought by either party in a court of law, and a motion to compel is brought by any party'").

## IV.   Conclusion

For the foregoing reasons, the Court grants CSPA's motion to compel Deardorff to individual arbitration and will stay the case and place it in suspense pending the resolution of Deardorff's arbitration.[16]

---

[16] Pursuant to § 3 of the FAA, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  "The plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."  *Colon*, 2017 WL 2572517, at *7 (quoting *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004)); *see also Caruso*, 2018 WL 4579691, at *5.

An appropriate Order follows.